The Mobile and Ohio Railroad Company

*v.*

Fannie Massey, Admx.

*Filed at Mt. Vernon June 19, 1894.*

1. Negligence—*capacity in which servant acts, a question of fact.* Where the negligent servant is employed both in the capacity of conductor of a construction train and in that of foreman or vice-principal over the men engaged in working with the train, the question in which of these two capacities a certain act of negligence is committed by him is one of fact, for the jury, and not reviewable in this court.

2. Same—*whether two employees are fellow-servants is a question of fact.* It cannot be asserted as a legal conclusion that the conductor of a construction train is a fellow-servant with the laborers employed in loading and unloading the train.

3. Same—*directing verdict as to fellow-servants—when not proper.* The conductor of a construction train, who was also foreman of the force working with said train, negligently failed to read a telegraphic order sent him, warning him to avoid a certain wild train, the consequence of which negligence was a collision of the two trains, in which collision a shoveler, belonging to the working force, and riding upon the construction train, was killed: *Held,* that the action of the trial court in refusing to instruct the jury, in substance, that the conductor and the deceased were fellow-servants, and in leaving that question to be found by the jury, was not error. This case distinguished from *Abend* v. *Terre Haute and Indianapolis Railroad Co.* 111 Ill. 202.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Jackson county; the Hon. J. P. Robarts, Judge, presiding.

This was an action on the case, brought by Fannie Massey, administratrix of the estate of John T. Massey, deceased, against the Mobile and Ohio Railroad Company, to recover damages for the death of the plaintiff's intestate, caused, as is claimed, by the negligence of the defendant's servants. The cause was tried on the defendant's plea of not guilty, and at such trial the jury found the defendant guilty, and assessed the plaintiff's

damages at $2500, and for that sum and costs the plaintiff
had judgment.   On appeal to the Appellate Court the
judgment was affirmed, and the present appeal is from the
judgment of affirmance.   The statement of the facts, pre-
pared by the Appellate Court, the correctness of which
does not seem to be challenged, is substantially as follows:

On the 10th day of December, 1891, the appellant was
operating a train known as a "work train," in removing
earth from the cut on its railroad between Jonesboro and
Mountain Glen, Illinois, the train being composed of an
engine and three flat-cars.   The crew consisted of a
conductor, an engineer, a fireman and a brakeman, and
besides the crew, there were from twelve to fifteen
shovelers or laborers, who loaded the earth upon and
unloaded it from the train.   These laborers would load
the earth upon the flat-cars and then get upon the cars
and ride to the place where it was to be unloaded, and
there unload it with their shovels.   The laborers were
boarded by the appellant in a boarding car or cars, situ-
ated at Mountain Glen.   In going and returning from
the boarding cars to their place of work the laborers
were accustomed to ride on the flat-cars.

B. F. Rathwell was the conductor and R. B. Cutler
the engineer of the work train.   In addition to being
conductor, Rathwell was foreman of the laborers, having
authority to hire and discharge them, and having entire
charge of the train and men.   There was but one railroad
track between Jonesboro and Mountain Glen, that being
the appellant's main track.   Between these two places
there was but one switch or side-track, that being at a
"blind station,"—that is, a station at which there was
no station house, agent or telegraph operator,—called
Kaolin, and there was no telegraph station between
Jonesboro and Mountain Glen, the distance between
those two points being six and eight-tenths miles.

The cut in which the work train was being loaded
was about one and one-half or two miles south of Moun-

tain Glen, and about five miles north of Jonesboro, and the switch at Kaolin was about one-half mile north of the cut. The work train had to stand on the main track while being loaded, and it had to pass over that track in hauling earth from the cut to Mountain Glen, and in returning to the cut.

The only way of notifying the work train of the coming of an extra train was to send a telegraphic train order from the train master's office at Murphysboro to a telegraph station, directed to the conductor and engineer of the work train, in care of the conductor and engineer of a particular train known by the conductor and engineer of the work train to be due. Copies of this order would be delivered by the operator receiving it, to the conductor and engineer of the particular train in whose care it was sent, and they would take it and deliver it to the conductor and engineer of the work train. This was the manner provided by the appellant's rules for the delivery of train orders to a train at a non-telegraphic station.

The engine which hauled the work train was engine number 53. This work train had to protect, daily, against eight or ten trains of the defendant. On December 10, 1891, appellant ran an extra freight known as "extra 88 south," from Murphysboro south, Murphysboro being north of Mountain Glen. Extra 88 south had to pass the cut in which the work train was loading with earth. The train dispatcher at Murphysboro sent a train order to Jonesboro, directed to the conductor and engineer of engine 53, care of number 32, a regular north bound freight train, to protect for extra 88 south after 4:30 P. M., December 10, 1891. One copy of this train order was delivered to John Lewis, the engineer, and two copies were delivered to C. A. Sarber, the conductor of number 32, by the operator at Jonesboro, to be delivered to the conductor and engineer of number 53, the work train engine.

The work train engine ran with a load of earth from the cut to Mountain Glen a short distance ahead of number 32, and went upon a switch track there, so that number 32 could proceed north. When number 32 reached Mountain Glen it stopped, its caboose being then between 200 or 300 yards from the engine of the working train. The engine cut loose from the train and went to the water tank to take water, leaving the conductor in the caboose. When the engineer of number 32 had taken water, he pulled up opposite the engineer of number 53 and handed him his copy of the train order, to protect for extra 88 south after 4:30 P. M. At the time this copy of the train order was delivered to the engineer of the working train by the engineer of number 32, the conductor of the working train was standing upon a flat-car just back of the tank of engine number 53. This order was delivered by the engineer of number 32 to the engineer of the working train at about 3:45 P. M.

The engineer of the working train made a mistake in reading the order, by reading the word "south" in the order as "north." The order was to protect for extra 88 south, but the engineer by mistake read it to protect extra 88 north. The conductor of the working train asked the engineer of his train what the order was, and the engineer held the order up in his hand and told him that it was an order to protect against extra 88 north after 4:30 P. M., and told him to come and get it. The conductor said, "All right; I will be there." He did not go and get the order, however, as it was his duty to do. The rules of the company required him to compare his order with that of the engineer. At this time the engineer of the work train had but one copy of the order, which was the order delivered to him by the engineer of number 32. The conductor of number 32 had not as yet delivered his copies of the order to the conductor of the work train. Number 32 was composed of an engine and sixteen freight cars, and the caboose.

When the engineer of number 32 had delivered his copy of the order to the engineer of the work train, he went back and coupled on to his train, and started north with it. Just as the work train was pulling out from the switch at Mountain Glen, the conductor of number 32, from the caboose of his train, handed the conductor of the work train his two copies of the order to protect for extra 88 south after 4:30 P. M. The conductor of the work train was at the switch stand about 300 or 400 feet north of the train, for the purpose of throwing the switch to let his train upon the main track, when the conductor of number 32 delivered to him his copies of the order.

The work train then went back to the cut for the purpose of being again loaded with earth, getting there about 4:00 P. M. When it reached the cut, the conductor, thinking from what his engineer had told him, that extra 88 was coming from the south, sent his brakeman south to flag extra 88. The manner provided by appellant's rules for protecting one train against another was to send a flagman from the train to be protected in the direction from which the train to be protected against was coming, sufficiently far to enable him to stop the latter before it reached the former. The conductor and engineer of extra 88 south had also been duly notified by appellant's train master not to pass Mountain Glen until 4:30 P. M., and to look out for the work train protecting between Mountain Glen and Jonesboro. When the work train was about ready to start for Mountain Glen, the conductor called in the brakeman, said "all aboard," got upon the engine with the engineer, told the engineer to run to Mountain Glen, and about 5:25 o'clock the work train started from the cut toward Mountain Glen with its last load of earth for the day. It had gone about a quarter of a mile from the cut when it collided with extra 88 south, running at the time at the rate of about thirty-five miles an hour. The conductor was on the en-

gine, and he and the engineer jumped before the collision. James Massey, Dennis Godfrey, and the plaintiff's intestate, John T. Massey, three of the laborers who had loaded the flat-cars, and were riding upon them at the time of the collision, were injured, and John T. Massey afterward died by reason of his injuries.

The declaration contains three counts, which are alike in the main, and set forth the facts substantially as above stated.

Messrs. LANSDEN & LEEK, for the appellant:

The negligent acts on the part of the conductor and engineer of the work train were the negligent acts of the fellow-servants of the laborers working in loading and unloading said train. *Abend* v. *Railroad Co.* 111 Ill. 202; *Railroad Co.* v. *McDonald*, 21 Ill. App. 409; *Miller* v. *Railway Co.* 24 id. 326; *Joliet Steel Co.* v. *Shields*, 146 Ill. 610.

Mr. JOHN BAIN, for the appellee:

The conductor and deceased were not fellow-servants. *Railroad Co.* v. *Collins*, 2 Duvall, 114; *Railway Co.* v. *Stevens*, 20 Ohio, 415; *Railway Co.* v. *Ross*, 112 U. S. 377; *Railway Co.* v. *Moranda*, 93 Ill. 302; *Railroad Co.* v. *May*, 108 id. 288; *Railway Co.* v. *Hawk*, 121 id. 259; *Rolling Mill Co.* v. *Johnson*, 114 id. 57.

Mr. JUSTICE BAILEY delivered the opinion of the court:

There is very little conflict in the evidence in this case, and the facts proved tend to show that the injury which caused the death of the plaintiff's intestate resulted from the negligence of Rathwell, the conductor of the work train, and the foreman, having charge of the men employed in loading and unloading the cars. His negligence consisted primarily in failing to read the telegraphic order of which a copy was handed to him, and in relying upon the erroneous reading, by the engineer, of the duplicate in his possession, instead of carefully

comparing the two, as the rules of the company required. He was also negligent in ordering his men to board the train and causing the train to be started northward with them on board, when he ought to have known, and if he had read the order in his possession would have known, that a collision with the south bound train would almost unavoidably result.

The defense mainly relied uqon at the trial was that Rathwell and the plaintiff's intestate were fellow-servants of the defendant, and that, for an injury resulting from Rathwell's negligence, therefore, the maxim *respondeat superior* can not be invoked. The court in a series of instructions, of which no complaint seems now to be made, submitted to the jury the question whether Rathwell and the plaintiff's intestate were fellow-servants, to be determined by them as a question of fact. Other instructions were asked by the defendant holding, as a legal conclusion, that they were fellow-servants, and that for that reason the verdict of the jury should be for the defendant. These the court refused to give, and the principal, and in fact only, question presented by this appeal is, whether the court erred in refusing those instructions.

Rathwell, as it seems, was both conductor of the train and foreman of the gang of men employed in loading and unloading the cars, and it appears to be conceded that, in the latter capacity, he was vested with complete authority and control, having power to hire and discharge the men at his discretion. It does not seem to be disputed that as foreman he held the position of vice-principal, but it is insisted that his negligence was solely in his capacity of conductor, and that in that capacity he was a fellow-servant with all those employed on or connected with the operation of the train.

If it be important to determine whether his negligence was in his capacity of conductor, or of foreman, or both, that would seem to be, under all the circumstances, a question of fact for the jury, and all questions of fact

having been settled adversely to the defendant by the judgment of the Appellate Court, that question is not a subject for consideration here.

But if it be conceded that he was negligent as conductor, only, we are not prepared to hold, as a legal conclusion, that he was a fellow-servant with the plaintiff's intestate and the other laborers employed to load and unload the train. The general rule recognized by the repeated decisions of this court is, that the question whether different servants of the same master are fellow-servants, within the legal signification of that term, is a question of fact, to be determined by the jury from all the circumstances of each case. Thus, in *Chicago and Northwestern Railway Co.* v. *Moranda,* 108 Ill. 576, the circuit judge had instructed the jury that, under the facts appearing in that case, a section foreman having charge and oversight of the repairs of a certain portion of the defendant's track was not a fellow-servant with the engineer and fireman running one of its locomotive engines, and it was held that the instruction was erroneous, the rule being, that whether such persons were so co-operating or consociating at the time of the injury as to exempt the common master from liability for an injury received by one in consequence of the negligence of the other, was a question of fact for the jury, and not of law for the court.

The rule that while the definition of fellow-servant may be a question of law, the question whether a given case falls within that definition is always one of fact, is supported also by the following decisions: *Indianapolis and St. Louis Railroad Co.* v. *Morgenstern,* 106 Ill. 216 ; *Lake Erie and Western Railroad Co.* v. *Middleton,* 142 id. 550 ; *Pullman Palace Car Co.* v. *Laack,* 143 id. 242.

It follows that the instruction asked by the defendant, that if the plaintiff's intestate was a shoveler in the defendant's employ on one of its construction or work trains, and that while riding upon the train he was in-

jured by the negligence of the conductor, he and the con-
ductor were fellow-servants, and the other instructions
laying down a similar rule, were properly refused.

To support the contrary view, the defendant relies
mainly upon the case of *Abend* v. *Terre Haute and Indian-*
*apolis Railroad Co.* 111 Ill. 202. In that case the plaintiff's
intestate and others had been sent on a wrecking train to
remove from the track a wreck caused by a collision
which had happened on the preceding day. The de-
ceased, instead of taking his seat in the wrecking car, as
he should have done, rode on the engine, in contraven-
tion of an express rule of the company, and took his seat
on the fireman's side, immediately in front of the fireman.
While he was thus riding the engine collided with an-
other train, and killed him. At the trial the court
directed a verdict for the defendant. That ruling was
affirmed by the Appellate Court, and on a further appeal
to this court the judgment was affirmed by a divided
court, the principal ground upon which this court sus-
tained the ruling of the trial court being, that the evi-
dence wholly failed to show the exercise of due care by
the deceased at the time he was killed. The opinion
goes further, however, and sustains the ruling of the
trial court on the additional ground that under the pecu-
liar facts in that case the deceased and the employee
who, for the time being, was acting as engineer and con-
ductor, and through whose negligence the collision took
place, were fellow-servants. It is perhaps worthy of re-
mark that the only authorities referred to in the opinion
in support of the proposition that the deceased and the
engineer were fellow-servants, were decided when this
court had the power, in cases of this character, to con
sider and sustain errors of fact. We do not think that
this case can be given the effect of establishing a rule
contrary to that laid down in the other cases above cited.

The court having submitted the question as to whether
the deceased in this case and the conductor were fellow-

servants, to the jury as a question of fact, and the jury having found that they were not, the contention that the verdict was contrary to the evidence was a proper one to be addressed to the Appellate Court, but it is one which the statute precludes us from entertaining or considering.

We have carefully examined all the defendant's refused instructions, and are of the opinion that they were properly refused, and no other ground for the reversal of the judgment being urged, it will be affirmed.

*Judgment affirmed.*