Chicago and Western Indiana Railroad Co. *et al.*

*v.*

Edmund A. Flynn.

*Filed at Ottawa January 15, 1895.*

1. Master and Servant—*the fellow-servant question is one of fact.* The question whether two servants in the employ of the same master are fellow-servants is one of fact, for the jury.

2. Same—*habitual breach of rule by employee with master's knowledge.* Although, generally, an employee cannot recover for injuries resulting from his knowingly and intentionally disobeying a reasonable rule or regulation of the employer, the law is otherwise where the breach of the rule or regulation has grown to be habitual, with the knowledge and tacit acquiescence of the employer.

3. Instructions—*which fail to submit whether rule is waived, properly refused.* Instructions that a railroad engineer cannot recover for personal injuries resulting from his disregard of a rule that imperfect display or absence of a signal should be regarded as a danger signal, are properly refused, where they fail to submit the question whether the violation of the rule had become so habitual as to raise a presumption of knowledge and approval by the railroad company, and also whether it was practicable to observe the rule and run the train as required by the company, there being evidence sufficient to raise these questions.

*Chicago and Western Indiana Railroad Co.* v. *Flynn,* 54 Ill. App. 386, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Richard W. Clifford, Judge, presiding.

Charles M. Osborn, and Samuel A. Lynde, for appellants :

Flynn's willful and deliberate disregard of the rules of his employer was a direct and proximate cause of his injury, and he should not be allowed to recover. *Railroad Co.* v. *Rush,* 84 Ill. 570 ; *Railroad Co.* v. *Patterson,* 93 id. 290 ; *Abend* v. *Railroad Co.* 111 id. 202 ; *Railroad Co.* v. *Neer,* 26 Ill. App. 356 ; *Railroad Co.* v. *Young,* 26 id. 115 ; *Railroad Co.*

v. *Thomas,* 51 Miss. 637; 2 Thompson on Negligence, 1018; Beach on Cont. Negligence, sec. 373.

The law does not favor putting a premium on neglect of duty, and does not excuse such neglect because it has been a frequent occurrence in the past.   *Francis* v. *Railroad Co.* 53 Am. & Eng. Ry. Cas. 410.

BARNUM, HUMPHREY & BARNUM, for appellee:

A master cannot escape liability to a servant by printing and publishing rules which the master himself does not observe and obey.   Wood on Master and Servant, sec. 401; *Railway Co.* v. *Taylor,* 69 Ill. 465; *Railroad Co.* v. *George,* 19 id. 517.

BAILEY, J.:   This was an action on the case, brought by Edmund A. Flynn, against the Chicago and Western Indiana Railroad Company and the Belt Railway Company of Chicago, to recover damages for a personal injury. The plaintiff, at the time of his injury, was a locomotive engineer in the employ of the defendant railway companies, and was engaged in running a locomotive engine drawing a train of freight cars, in a southerly direction, over the "Belt railway," a line of railway extending from South Chicago to Cragin, a point at the north of the city, a distance of seventeen and one-half miles, and connecting with all the lines of railway having their termini in Chicago.   On the 16th of March, 1891, in the night time, he started with his train from the northern terminus of the road, with orders to meet a north-bound train at the Wisconsin Central railway crossing.   At that point there was a semaphore, the signals from which determined his right to pass over the crossing.   As he reached a point a little north of the crossing he found the signal from the semaphore against him, and he accordingly brought his train to a halt and remained standing ten or fifteen minutes.   The north-bound train was there standing on the main track, the engine belonging to that train being engaged in doing some switching in the yard.

The engine, having returned and coupled on to the train, backed south past a switch located between a quarter and half a mile from the crossing, and then, by means of the switch, ran north on to a side-track. It was the duty of the brakeman at the rear of the train, as soon as the train had cleared the main track, to close the switch; but this he failed to do. When the north-bound train had got on to the side-track, the plaintiff saw some one at the rear of the train give a signal with his lantern indicating that the main track was clear. This signal was repeated by another person at the head of the train, and the semaphore then gave the plaintiff a signal to go ahead.

At the switch in question there was a stand, upon which was a lamp which was operated automatically, so as to show a green or blue light if the switch was properly closed and a red light if it was left open, but on this occasion the lamp was not lighted, and the evidence tends to show that, because of the faulty construction or imperfect ballasting of the stand, the light was liable to be put out by the jolting of the trains passing over the switch, and that it in fact was out the greater portion of the time.

The plaintiff, when examined as a witness in his own behalf, testified that when at the crossing he saw and knew that the switch-light was not burning; that he knew that a train had just passed through the switch, and had no means of knowledge, except from the signals given by those in charge of the train, whether it was closed or not.

One of the defendants' rules for the government of their employees in charge of their trains, and with which the plaintiff admits that he was familiar, was as follows: "A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal, and the fact reported to the master of transportation." There was evidence tending

to show that this lamp had been so reported, and several witnesses testify that as this light, as well as others along the line of the defendants' road, was frequently out, it had become the common practice with the plaintiff and other engineers in the employ of the defendants to run by this and other switches without regard to the rule.

It seems that some distance south of the switch there was an up-grade, and the evidence tends to show that the plaintiff, in order to acquire sufficient momentum to carry him easily up the grade, after passing the crossing ran his train as rapidly as he could, so that when he reached the switch he was running at from fifteen to twenty miles an hour. Just before he reached the switch he discovered that it had not been closed, and he instantly shut off steam, put on the brakes and jumped from his engine, and in so doing received the injury complained of.

The acts charged against the defendants in the several counts of the declaration are, first, failing to furnish a proper person to close the switch, and in leaving the switch open; second, having in their employ as rear brakeman a person known to be an improper, drunken and incompetent person; third, using such defective lights and signals, and such unsafe and improper appliances therefor, that the light at the switch in question became extinguished; and fourth, failing to provide and keep on the switch-stand a proper red light or other danger signal showing the switch to be open, and leaving the switch open and the rails of the main track disconnected.

The defendants filed a plea of not guilty, and at the trial the jury found the defendants guilty, and assessed the plaintiff's damages at $15,000, and for that sum and costs the court, after denying the defendants' motion for a new trial, gave judgment in favor of the plaintiff. That judgment has been affirmed by the Appellate Court on appeal, and the present appeal is from the judgment of affirmance.

There was evidence tending to show that the person who, at the time of the plaintiff's injury, was acting as rear brakeman on the north-bound train, and through whose carelessness the switch was left open, was in the habit of becoming intoxicated, and had once been discharged from the defendants' employ for that reason and subsequently re-employed, and also that at the time he left the switch open he was in a state of intoxication. It is claimed on the part of the plaintiff that the drunkenness and consequent unfitness and incompetency of this brakeman were known to the defendants, and that their continuing him in their employ in that capacity was negligence. On the part of the defendants it is contended that the brakeman was a fellow-servant with the plaintiff, and that as the plaintiff's injury was caused by the negligence of a fellow-servant he ought not to recover.

As this court has frequently held, the question whether two servants in the employ of the same master are fellow-servants is a question of fact, for the jury. (*Mobile and Ohio Railroad Co.* v. *Massey,* 152 Ill. 144, and cases there cited.) If that question, then, was properly submitted to the jury by the instructions, the conclusion to which the jury arrived is not open to review in this court. The plaintiff asked no instructions, and all those asked by the defendants upon the law as to fellow-servants were given to the jury as asked. The instructions thus given stated the law on that question very favorably to the defendants, and they therefore have no ground to complain of any ruling of the court relating to that branch of their defense. It is clear that no question is thus presented which this court can review. No error is or can be assigned upon the instructions, and the finding of the jury as to the facts is conclusive on this court.

The defendants based their defense largely upon the proposition that the plaintiff, at the time he was injured, was running his engine and train in disregard of the rule of the defendants above set forth, and that for that

reason he should not be permitted to recover. Upon this branch of their defense several instructions were asked, all of which, but one, were refused. The refused instructions which, in our opinion, most fully embody the rules of law relied upon and are subject to the least criticism were the second and fourth, which were as follows :

2. "If the jury shall find, from the evidence, that one of the rules of the defendant company directed that in case a signal should be imperfectly displayed or should be absent at a place where a signal was usually shown, that fact should be regarded as a danger signal, and that Flynn was familiar with that rule, then they are instructed that it was his duty, in the operation of his engine and while in the employ of the defendant company, to observe that rule strictly, and that he had no right to ignore or deviate from it in any respect, unless so instructed by his superior officer."

4. "If the jury shall find, from the evidence, that the rule which has been referred to, and which required that a signal imperfectly displayed or the absence of a signal at a place where a signal is usually shown, must be regarded as a danger signal, was familiar to Flynn, and if they shall further find that the signal light upon this switch was not burning, and that Flynn knew, when he started to cross from the Wisconsin Central crossing and run past this switch, that said light was not burning and the signal was not displayed at that place, then it was his duty, under those circumstances, to regard the absence of the light from that switch as a danger signal and to stop his engine before reaching the said switch, or to approach the said switch with his engine under such control that he could have stopped it before reaching it."

It is doubtless the general rule that where an employee knowingly and intentionally disobeys a reasonable rule or regulation of his employer established for his safety, and is injured in consequence thereof, he can not recover. Among the many authorities sustaining this

rule, the following may be cited: *G. W. T. & P. Ry. Co.* v. *Ryan,* 69 Texas, 665 ; *Wolsey* v. *L. S. & M. S. R. R. Co.* 33 Ohio St. 227; *Gardner* v. *M. C. R. R. Co.* 58 Mich. 485 ; *Lyon* v. *D. L. & L. M. R. R. Co.* 31 id. 429 ; *Shanny v. Androscoggin Mills,* 66 Me. 420; *G. R. R. & B. Co.* v. *Rhodes,* 56 Ga. 645; *I. C. R. R. Co.* v. *Patterson,* 93 Ill. 290. In the case last cited the plaintiff, who was a locomotive engineer in the employ of the defendant, was injured in consequence of his engine being thrown from the track, the negligence charged against the defendant being the allowing of the rails of its track to become worn, splintered and defective, the defendant insisting that at the time he was injured the plaintiff was driving his engine at a high and dangerous rate of speed, in violation of one of the defendant's rules. It appeared that the speed prescribed by the defendant's time-card for the plaintiff's train at the place where it was derailed was twenty-four miles an hour, and that one of the defendant's rules required its locomotive engineers to reduce the rate of speed when the track was in bad order. There was some conflict in the evidence as to the rate of speed at which the plaintiff was running, some of the witnesses placing it as high as forty-two miles an hour, and the plaintiff admitting that he was running thirty miles an hour. As the evidence on both sides showed that the plaintiff was running at a rate of speed which was in violation of the defendant's rule, it was held that in no view of the evidence was he entitled to recover, and the judgment was reversed and a remanding order refused, thus terminating the litigation, although the verdict on which the judgment was rendered was the last of three concurring verdicts in favor of the plaintiff.

But the law seems to be otherwise where an injury to an employee results from a breach of a rule or regulation of the employer which has grown to be habitual, to the knowledge of the employer. Thus, in *Hayes* v. *Bish,* 41 Hun, 407, an employee, a boy fifteen years of age, was em-

ployed to feed a press with strips of tin, out of which buttons were stamped. Notices were conspicuously posted in the factory forbidding the placing of the hands or fingers between the dies for any purpose. The evidence tended to show that it was necessary, in the ordinary prosecution of his work, for the employee to place his fingers under the punch when the last button of the strip was to be stamped, and that such was the ordinary custom in the factory, and that in that way the injury complained of was received. The trial court having dismissed the suit on account of the contributory negligence of the plaintiff, its judgment was reversed, on the ground that the plaintiff's negligence should have been submitted to the jury. In the opinion the court say: "Ordinarily, disobedience of a rule would be negligence; but if the defendant prosecuted the work in a manner that rendered a violation of the rule necessary or probable, or if it suffered or approved its habitual disregard, the rule was inoperative."

In *Fay* v. *M. & St. L. Ry. Co.* 30 Minn. 231, it was held that an employee is not bound by a rule of the employer which has not been properly published or brought to the employee's attention, or which the employer has habitually neglected to enforce.

In *Sprong* v. *B. & A. R. R. Co.* 58 N. Y. 61, the plaintiff's intestate, a head brakeman on one of the defendant's freight trains, was killed by a collision, caused by the defendant's negligence, while he was riding on the engine, it appearing that he was not at the time engaged in any service which required his presence there, and that he was not on the engine by direction of the conductor or engineer. Among the defendant's printed rules was one which provided that no brakeman should be allowed to leave his post or to be in a car when the train was running. Several witnesses, however, testified that it was the usual custom for the head brakeman to ride on the engine, and one witness swore that it was the uniform practice. It was held that the deceased was

authorized to infer, from the long continued practice of other head brakemen in the defendant's employ to ride on the engine, and from the acquiescence of his superiors in that practice, that it was allowed, and that his being on the engine at the time he was killed was not negligence.    See Wood on Master and Servant, sec. 401.

In *Alexander* v. *L. & N. R. R. Co.* 83 Ky. 589, it was held that the violation by a conductor of a rule of the company forbidding a "running switch" does not preclude him from recovering against the company for an injury received in making such switch, it appearing that this was the only practicable way of putting cars on the particular switch, and that it had been so habitually resorted to as to raise the presumption that the company was aware of and approved it.

In the case before us, the instructions above recited, as well as the others asked by the defendants covering that branch of the case, were defective, and therefore properly refused, because of their failure to submit to the jury the question whether the violation of the defendant's rule had become so habitual as to raise a presumption that the defendants were aware of and approved it, and also whether, under existing conditions, it was practicable to observe the rule and at the same time run the defendants' trains in the time and manner required by them.    There was evidence, we think, sufficient to raise these questions as questions of fact, for the consideration of the jury, and instructions in relation to the duty of the plaintiff to observe the rule should have required them to find whether these facts, which would have justified a departure from the rule, existed.

The plaintiff testified, in substance, that it was a common, every night occurrence to find the switch-light in question extinguished, and that the same thing was true of the signal lights all along the road ; that he was in the habit of running over the road regardless of that fact ; that if he had not done so he would have been

unable to get over the road in the night time, or to run his trains within the time required by the defendants; that when the lights were out they went right along, time and time again, finding the road clear; that at the time of his injury he was using just the same precaution he had used every night in the year.   Another witness, who was a locomotive engineer in the employ of the defendants for a short time about the time of the plaintiff's injury, testified that the custom at the time he commenced working for the defendants, and during all the time he was working for them, was, to run over the switches on the defendants' line of road without reference to whether the signal lights were burning or not. Other witnesses testified as to the frequency of the extinguishment of the signal lights along the line of the road, and that the defendants at one time employed a detective to investigate and ascertain the cause of their extinguishment.   It is true, the evidence relating to these matters was to some degree conflicting, and there was testimony tending to show affirmatively that these violations of the defendants' rule were not known to them or to their proper executive officers.   But the evidence, as a whole, presented questions of fact for the jury, and the instructions asked by the defendants were faulty in ignoring those questions, and in failing to submit them to the jury.

No other questions are raised by counsel in their briefs which we deem it necessary to discuss.   So far as the record is open for consideration in this court we find it free from error, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*