## The St. Louis National Stock Yards

*v.*

### August Godfrey.

*Opinion filed October 25, 1902.*

1. RAILROADS—*section 12 of act relating to operation of railroads does not apply to switch yards.* Section 12 of the act relating to operation of railroads, as amended in 1885, (Laws of 1885, p. 231,) requiring an engineer approaching a grade crossing of another railroad to stop his train and "positively ascertain that the way is clear" before proceeding, does not apply to switch yards consisting of an intricate system of tracks, some crossing each other, all used for switching purposes and belonging to the same company.

2. SAME—*when violation of rule is not negligence per se.* The violation of a rule of a stock yards company requiring a certain track to be used by out-going trains exclusively is not negligence *per se* on the part of an engineer using such track to enter the yards, where he never had notice of the rule, and there is evidence tending to show that the rule was not enforced but was disregarded habitually, with the knowledge and acquiescence of the company.

3. APPEALS AND ERRORS—*Supreme Court does not weigh evidence in passing on refusal of peremptory instruction.* If there is evidence that the plaintiff in a personal injury case was exercising due care for his safety, the fact that such evidence is contradicted does not authorize the Supreme Court to weigh the evidence, and thus determine that the trial court erred in refusing an instruction to find for the defendant.

4. SAME—*when Supreme Court cannot say there is no evidence of negligence.* If there is evidence that the defendant did not give signals and did not have the engine headlight lit, and it is conceded that the defendant did not send a man ahead, according to the usual custom, to ascertain whether the crossing was clear, the Supreme Court cannot say there was no evidence of negligence, and that the jury should have been instructed to find for the defendant.

5. EVIDENCE—*evidence of environment and usual manner of conducting business is competent.* In an action for personal injuries, evidence with reference to the location of buildings, tracks and cars, and of the usual manner of conducting the defendant's business, is competent, as shedding light upon the acts and conduct of parties.

6. INSTRUCTIONS—*when instruction does not limit plaintiff's use of care to moment of injury.* An instruction authorizing a verdict "if the jury believe, from the evidence, that the defendant is guilty of the acts of negligence charged in the declaration, and that the injury to the plaintiff complained of resulted therefrom while he

was in the exercise of ordinary care for his own safety," does not limit such care to the moment of injury.

7. SAME—*when instruction on subject of plaintiff's negligence is not objectionable.* An instruction holding that the question whether the plaintiff was guilty of negligence which contributed to his injury and without which the accident would not have occurred is for the jury, is not subject to the objection that it authorizes a recovery notwithstanding plaintiff's own negligence contributed to his injury, if it did not so far contribute as that without it the injury would not have occurred.

*St. Louis Nat. Stock Yards* v. *Godfrey*, 101 Ill. App. 40, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding.

This was an action on the case, in the city court of East St. Louis, by August Godfrey, appellee, against the St. Louis National Stock Yards, appellant, to recover for a personal injury suffered by him in the switch yards of appellant December 30, 1898.

The declaration contained but one count, and charged, in substance, that the appellee was in the employ of the Baltimore and Ohio Southwestern Railroad Company as a locomotive engineer, and was required, in the discharge of his duties, to operate and run a certain switching engine of said company in hauling freight cars into and out of the yards of the defendant at said city, and defendant was conducting the business of a stock yard company, and had in its use for that purpose divers switching engines, cars, trains, railway tracks and other appliances necessary in prosecuting said business, whereby it became the duty of defendant to conduct and carry on its said business in a reasonably prudent manner in order to avoid injuring the plaintiff while he was performing said services, but that the defendant, not regarding such duty, so carelessly and improperly managed and controlled one of its engines, with cars attached, the headlight of which engine was not burning, that it was negligently made to

collide with the engine which appellee was operating, whereby he was thrown to the ground and permanently injured without any fault or negligence on his part. The plea was not guilty.

Appellee was the engineer on a locomotive of the aforesaid railroad company, and with a switching crew of five men besides himself had run into the switch yards of appellant to do some switching for his road. He was familiar with the tracks and method of doing business in the yards. To enter the switch yards two tracks were available,—one called the "Whittaker track" and one called the "hog-house track." The Whittaker track was in use by another switching crew when appellee entered the yards, and so he used the hog-house track. To get to the place of his destination he had to cross several other tracks, the last one being the crossing of the track known as the coal track or the Nelson Morris track, which comes out from behind the large building of the Nelson Morris Company and crosses the hog-house track a little west of the building, almost at right angles. A switch engine of appellant, drawing a train of cars, was approaching this crossing at the same time. The two locomotives met on the crossing and appellant's engine pushed appellee's engine sideways and partly off the track, causing appellee to fall out between the engine and the tender, whereby he was seriously and permanently injured. When within fifty feet of the crossing appellee had stopped his engine and had given two blasts of the whistle, and not hearing any signal from any other engine, assumed, under the rules observed in the switch yards in regard to such signals, that the crossing was clear. He had sent his helper, Kehoe, ahead to see if the track was clear and to throw a switch a little way beyond the crossing. When Kehoe reached the crossing he signaled appellee to go ahead and then proceeded to throw the switch. The headlight on appellee's engine was burning and the bell was ringing. None of his crew

heard any whistle or bell from the approaching engine of appellant's train, and they testified that its headlight was not burning. Appellant's switching crew testified that their headlight was burning and the bell ringing and that the whistle was blown for the crossing, but that they heard no signals from appellee's engine and that its headlight was not burning. It was about 5:30 o'clock in the afternoon, and was getting dark. The two engines were hidden from each other's sight, as they approached the crossing, by the Nelson Morris building and by box-cars which filled two stub-tracks. The wind was blowing and other engines were working in the yards. One of appellant's switching crew was on the front foot-board of the engine, and when about fifteen feet from the crossing discovered appellee's engine approaching. He immediately signaled appellant's engineer to stop, whereupon the engineer set the brakes and reversed his engine and brought it to a stop, but the slack of the loaded cars attached to the engine, it being on a slight down grade, pushed it against appellee's engine and thus caused the accident, as before stated.

At the close of appellee's evidence appellant's counsel moved the court to instruct the jury to find a verdict for appellant, which motion was denied. They also moved to exclude certain portions of the evidence from the jury, and these motions were denied also. These several motions were renewed at the close of all the evidence and again denied. The jury found the issues for the plaintiff and assessed his damages at $5500, which amount was reduced to $4000 by *remittitur*, and judgment was entered therefor. The Appellate Court for the Fourth District affirmed the judgment, and the appellant now brings the case to this court for review.

MESSICK & CROW, for appellant.

F. C. SMITH, and M. MILLARD, for appellee.

Mr. Justice Carter delivered the opinion of the court:

The first contention of appellant is, that the trial court erred in refusing to direct a verdict in its favor, on the ground alleged that the evidence did not tend to prove that the plaintiff used ordinary care for his own safety, and because there was no evidence that he performed the duty required of him by the statute before attempting to pass the crossing. The statute referred to is section 12 of "An act in relation to fencing and operating railroads," as amended June 19, 1885, (Hurd's Stat. 1899, p. 1330,) viz.: "All trains running on any railroad in this State, when approaching a crossing with another railroad upon the same level, * * * shall be brought to a full stop before reaching the same, and within eight hundred feet therefrom, and the engineer or other person in charge of the engine attached to the train shall positively ascertain that the way is clear and that the train can safely resume its course before proceeding to pass the * * * crossing." The point made is, that the plaintiff, who was in charge of the engine, did not "positively ascertain" that the way was clear, and that such violation of the statute was negligence *per se.* We are of the opinion that the statute does not apply to switch yards like the one in question, consisting of an intricate system of tracks running in various directions, some crossing each other, all used for switching purposes and belonging to the same railroad or company.

It is also urged that Kehoe, the plaintiff's helper, was negligent in not seeing the approaching train when he ought to have seen it, and in not signaling appellee to stop, and that his negligence was imputable to appellee. Upon this question the trial court gave an instruction at the instance of the defendant, which told the jury, in substance, that if they found Kehoe guilty of negligence they should find a verdict for the defendant. This instruction was more favorable to the defendant than it was entitled to. (*Chicago and Eastern Illinois Railroad Co.*

v. *O'Connor*, 119 Ill. 586; *Chicago and Alton Railroad Co.* v. *Harrington*, 192 id. 9.) Kehoe was not an employee of the defendant, and if it was through his negligence that appellee was injured, that would not absolve the defendant from responsibility if it was also negligent. The case of *Chicago and Northwestern Railway Co.* v. *Snyder*, 117 Ill. 376, is not a parallel case. The case at bar was not brought against the common master of Kehoe and the plaintiff, while the case last cited was brought against the common master and another.

It is also claimed that there was no evidence that Godfrey used reasonable and proper care in attempting to pass the crossing, and that he is contradicted by his own witnesses. There was evidence tending to prove that appellee was in the exercise of ordinary care for his safety when attempting to pass over the crossing, and it is not within the province of this court to weigh the evidence when it is conflicting.

It is further said that there was no evidence that the defendant carelessly and improperly managed its switch engine so that it was negligently made to collide with plaintiff's engine. It was a controverted fact whether defendant gave any signals or had its headlight burning. It is conceded that it did not send out any man to see whether the crossing was clear before moving its train down. There was evidence that there was a rule or custom to send out a flagman before reaching the crossing, to ascertain whether it was clear or not. There was evidence tending to prove negligence in the respect mentioned, and the fact has been finally and conclusively settled against the appellant.

It was also claimed by appellant that it had an order in force that all in-bound trains should take the Whittaker track and that the hog-house track was only to be used by out-bound trains. The plaintiff never had any notice of such rule, and there was evidence tending to prove that the rule was not enforced, but was disregarded

habitually with the knowledge and acquiescence of the defendant. It cannot, therefore, be said that it was negligence *per se* for plaintiff to take the hog-house track in going into the yards.

The motions to direct a verdict for the defendant were properly overruled.

Evidence was admitted by the trial court with reference to the location of certain buildings, tracks and cars, and with reference to the usual manner of conducting the business of appellant and others in appellant's yards. All this was competent evidence in the case. The environment and usual manner of conducting the business involved at the place of the injury is competent as shedding light on the acts and conduct of the parties.

Error is assigned on the giving of the following instructions for appellee:

1. "The jury are instructed that if they believe, from the testimony, the rule or notice of the defendant read in evidence, relating to the use of tracks by crews of the plaintiff's company in entering the defendant's yard from the Terminal Railroad Association yard, was habitually violated with the knowledge and acquiescence of the defendant or was not enforced as to the switching crew with which the plaintiff worked, then the jury should disregard such notice or rule in considering the whole case.

2. "If the jury believe, from the evidence, that the defendant is guilty of the acts of negligence charged in the declaration, and that the injury to plaintiff complained of resulted therefrom while he was in the exercise of ordinary care for his own safety, the defendant is liable and plaintiff is entitled to a verdict.

5. "The jury are further instructed, as a matter of law, that the question whether the plaintiff was guilty of negligence which contributed to his injury and without which the accident would not have occurred, is for the jury, and must be determined from all the facts and circumstances shown by the testimony.

7. "It was the duty of the defendant's switching crew to exercise ordinary care in so doing their work as to avoid injuring the plaintiff while running his engine upon the defendant's track, and if the jury believe, from the evidence, the engine which struck and collided with plaintiff's engine at the crossing was not managed and controlled with ordinary care by the defendant's crew in charge of the same, and the plaintiff's injury was the direct result of the negligence of such crew in managing and controlling said colliding engine while he was in the exercise of ordinary care for his own safety, the defendant is liable and plaintiff is entitled to a verdict."

The first instruction states the rule correctly as laid down in *Chicago and Western Indiana Railroad Co.* v. *Flynn*, 154 Ill. 448. It does not assume to say anything about appellant's duty, as claimed by counsel, and could not in any way have misled the jury.

The second instruction is criticised by counsel also. They say the rule is, that although the plaintiff may have been in the exercise of ordinary care for his own safety at the time of the injury, still he was not entitled to recover unless he was in the exercise of ordinary care to foresee and avoid danger before the accident. They contend the instruction limits the time the plaintiff was required to use due care to the moment when he was injured. This interpretation of the expression, "while he was in the exercise of ordinary care for his own safety," is too narrow. The same contention was passed on adversely to appellant's contention in *Chicago and Alton Railroad Co.* v. *Fisher*, 141 Ill. 614. The words have reference to the whole transaction. (*Lake Shore and Michigan Southern Railway Co.* v. *Ouska*, 151 Ill. 232.) Besides, the third instruction required the jury to find that the plaintiff exercised ordinary care for his own safety before and at the time of the occurrence of the injury.

The same criticism is made of the seventh instruction. It is further claimed that this instruction assumes that

at some time the appellee was in the exercise of ordinary care. This criticism is hypercritical. A similar one was met in *Chicago and Alton Railroad Co.* v. *Fisher, supra,* and it was there said that the qualifying words, "if the jury believe, from the evidence," applied to the entire sentence.

The fifth instruction is said to be misleading, because it tells the jury "that the question whether the plaintiff was guilty of negligence which contributed to his injury and without which the accident would not have occurred, is for the jury." Counsel say that "if negligence on the part of the plaintiff affects the chain of causation in any degree, the courts will no longer weigh the negligence of the parties and nicely balance their degrees of negligence. The defendant was entitled to have the jury plainly instructed that if the negligence of plaintiff contributed, in any degree, to the injury, he could not recover." Counsel claim that this instruction lays down the doctrine that "plaintiff may recover notwithstanding his own negligence contributed to the injury, if it did not so far contribute as that without it the injury would not have occurred." If plaintiff was guilty of any negligence not contributing to the injury, such negligence could not be contributory negligence. As said in *Consolidated Coal Co.* v. *Bokamp,* 181 Ill. 9, "it might be that plaintiff failed to do some act or was guilty of some careless or negligent act which contributed to his injury yet which was not the proximate cause of the injury, and still be entitled to recover." In 7 Am. & Eng. Ency. of Law (2d ed. 371,) the following definition of contributory negligence is given: "Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." Mr. Beach, in his work on Contributory Negligence, speaking of the difficulty of framing precise definitions, suggests this definition: "Con-

tributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of." Without undertaking to define contributory negligence, we see no objection to the instruction mentioned, on the grounds urged by appellant.

Finding no error in the record the judgment must be affirmed.                                    *Judgment affirmed.*