# Joseph Kenny, Appellee, v. Marquette Cement Mfg. Co., Appellant.

## Gen. No. 4,944.

1. MASTER AND SERVANT—*when keyseat in shaft negligence.* If a shaft contain a keyseat or groove invisible in motion, known to the master and not shown to have been known to the servant and of which the servant in the exercise of ordinary care could not reasonably have been charged with knowing, an injury to such servant proximately resulting from such condition in such shaft, may be made the basis of recovery.

2. MASTER AND SERVANT—*when violation of rule will not preclude recovery.* While it is usually negligence for an employe to violate a known rule, yet if the rule is habitually violated with the knowledge and acquiescence of the employer, or is not enforced, then the rule is treated as inoperative.

3. MASTER AND SERVANT—*what not assumed risk.* A servant does not assume the risk arising from a condition of which he knows nothing and which he is not bound to know of by reason of the character of the duties which he is employed to perform.

4. EVIDENCE—*effect of introducing in chief, which is strictly competent only in rebuttal. Held,* that it was not error to permit the plaintiff to anticipate and to answer unfavorable evidence, which evidence it was apparent would be relied upon by the defendant.

5. TRIAL—*what jury not presumed to hear.* A statement shown by the record to have been made to the judge in a low tone of voice is presumed not to have been heard by the jury.

6. TRIAL—*right to examine talesmen with respect to acquaintance with party in interest not a party to the action.* If a defendant to a personal injury suit has insurance the plaintiff has the right to question a talesman as to his acquaintance, if any, with a resident agent of the insurance company which has issued such insurance, but in conducting such an examination no reference should be made to the fact of insurance or to the insurance company.

7. INSTRUCTIONS—*when clerical error does not justify refusal.* A mere clerical error in an instruction does not of itself require that the instruction be refused; the judge should correct the clerical error and if the instruction be otherwise correct, he should give it.

8. VERDICTS—*when not excessive. Held,* that a verdict for $7,500 rendered in an action for personal injuries was not excessive where it appeared that the plaintiff at the time of the trial was 27 years

of age; that before the injury he was right-handed, was in good health and was earning $2.40 per day; that he has lost his right arm and was injured in the back, breast and limbs; that he is permanently incapacitated for most kinds of manual labor; that he was in a hospital for three weeks and was laid up for three months and endured pain and suffering; that during the summer of 1906 he worked for the defendant and about 2 weeks before the trial he was again employed by the defendant in its shipping department and was then paid $2 per day; that he had not the education which fitted him to enter other employment where the use of his limbs was not needed.

Action in case for personal injuries. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1908. Affirmed. Opinion filed June 10, 1909.

McDOUGALL, CHAPMAN & BAYNE, for appellant.

H. M. KELLY and COLEMAN & COLEMAN, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Joseph Kenny was in the employ of the Marquette Cement Manufacturing Company as a laborer at its factory, which part of the witnesses place at Oglesby and others at Portland, in LaSalle county. It ground stone and manufactured cement, and had much machinery and many appliances for the purpose of conveying power to the different parts and floors of its factory. About a year before the accident here involved it moved a counter-shaft to a certain place on the third floor of the finished end, as it is called. At a certain place on this shaft power was applied to it which caused it to revolve about 130 times per minute. There were several pulleys attached to this shaft over which belts ran and conveyed power to other parts of the factory. This shaft had been formerly in use elsewhere in the factory, and then had a stationary pulley attached to its north end. When the shaft was removed to the position which it occupied when this accident happened the company had no occasion for a pulley on its north end, and the

pulley was removed, or not put on at that place. There was at the north end of the shaft a deep keyseat which had been used for the purpose of attaching the pulley at the north end. That keyseat remained uncovered and unprotected at the north end, though not needed for any purpose. About eighteen inches from the north end a pulley was attached immovably to the shaft, and a belt ran thereon to communicate power to some lower part of the building. Further south on the shaft was a pulley so attached to the shaft that by the use of a certain clutch it could be made to cease revolving though the shaft still remained in motion. There were apparently other pulleys on said shaft still further south attached by like clutches. Near the north end of the shaft and slightly east thereof was a skeleton partition or framework consisting of uprights and cross pieces nailed in place, so stationed that one could stand upon one of the cross pieces, hold on to the wood work with his left hand, reach around the end of the shaft and put the belt on the first pulley. On November 27, 1905, Kenny was directed by the foreman to go on the third floor, throw the belt off from the north pulley, thus stopping the machinery below which ran by the power conveyed through that belt, and then descend to the lower floor and do certain work. Kenny testified that it was also a part of the order that when that work was completed he should return to the third floor and put the belt back upon the north pulley. The foreman denied that that was included in the order. Kenny went to the third floor, threw off the belt, went below and did the work assigned, and then returned to the third floor and tried to put the belt on the pulley while standing underneath it upon the floor. The shaft was above his head, and the belt was greasy, and he found himself unable from that position to put it upon the pulley, which was in motion with the revolving shaft. He then stepped upon the frame work mentioned upon a cross piece about three feet above the floor, held on to an

upright with one hand and reached around to the west side of the shaft with the other hand and put the belt upon the pulley. As he did this work his breast was, as he supposed, about six inches from the end of the shaft. Just as he got the belt upon the pulley he was in some way caught upon the shaft and was rapidly revolved around it, his right hand was caught under the belt and severed from his arm, and he was dropped upon the floor, stripped of all his clothing except his shoes and stockings. His right arm received such injuries that it had to be amputated above the elbow. He was much bruised and injured otherwise. He brought this suit to recover damages for the injuries so caused him, and upon a jury trial had a verdict and a judgment for $7500, from which defendant below appeals.

The declaration contained nine counts. The court directed a verdict for defendant as to the fourth, fifth, seventh and ninth counts. The verdict and the judgment rests upon the first, second, third, sixth and eighth counts. These counts charge, with a fullness of detail unnecessary to be here stated, the operation of the factory by appellant and appellee's employment there. and that appellee was exercising due care, and that he was injured. The first count charged that appellant negligently maintained and used a certain counter-shaft which was broken and uneven, in the end of which was a keyseat or groove or open space in which the clothes of the employes working about the factory were liable to catch and become fastened while the shaft was in motion, and thereby injury be caused to such employes, and that, while appellee was placing a belt on a pulley in obedience to orders from appellant, his clothes came in contact with the counter-shaft and became fastened in the keyseat or groove, and thereby appellee was twisted and thrown and injured in the manner described. The second count contained a similar charge. The third count charged that appellant had installed a counter-shaft with an

uneven and rough surface, and it contained similar allegations to those in the prior counts, with the additional charge that appellee did not know of the rough and uneven condition of said counter-shaft. The sixth count charged that appellant negligently permitted the end of the counter-shaft to be used while it was uneven and rough, and while it extended out beyond the pulley and was without any guard or apparatus to prevent the clothing of employes from becoming fastened in said rough and uneven end of the counter-shaft, and that while appellee was carrying out the instructions of his foreman in endeavoring to throw a belt on the pulley his clothing became hooked and fastened in the rough and uneven end of the counter-shaft so exposed without guard or protection and thereby he was twisted and turned and injured as already stated. The eighth count charged that appellant installed and used a counter-shaft with the end unguarded and uneven and rough, and in such a condition as to catch and hold fast the clothing of any employe moving close to the end of said shaft, and that the defendant negligently directed appellee to throw the belt on the pulley close to the uneven and rough end of the shaft while the shaft was in motion, without advising appellee of the rough and uneven end of the shaft and of the danger attendant upon throwing said belt on said pulley close to the end of said shaft with said rough and uneven end while it was in motion, and that while appellee was obeying said order his clothes became caught and fastened in said rough and uneven end, and he was thereby injured as stated.

The existence of this deep keyseat in the end of the shaft was proved, and also that it had been hammered or pounded so that it was battered; and there was evidence to show that one part of the keyseat had become so bent as to form a hook upon which clothing could easily catch if brought in contact with it. Some of the witnesses testified that they had not noticed or

did not see this hook or bent condition. In all other respects this evidence was undisputed. The jury could hardly fail to find that this condition was dangerous to employes who had occasion to work around the north end of the shaft when it was revolving rapidly.

The counts of the declaration which remained in the case charged that appellee's clothing was caught in this keyseat or groove. Appellant contends that there is no evidence to sustain that charge; but on the contrary that appellee's hand was caught under the belt, and that he was thereby drawn upon the shaft and his clothing wrapped around it, and that that is not the case stated in the counts remaining in the declaration, and also was a risk which he assumed in undertaking to put on the belt while the pulley and shaft were in motion, and that therefore the recovery cannot be sustained. The position which appellee occupied, as already stated, while doing this work was a circumstance to be considered by the jury in determining whether his clothing was caught in the keyseat. He testified that as he was attempting to step down from throwing the belt on, the shaft which extended out from the pulley caught his blouse and wrapped him around the shaft and threw his arm into the pulley, and that this caused his clothing to come off and wrap on the shaft and pulled his arm off. Further on, he testified that the shaft took hold of his left breast, wrapped his clothing up tight and threw him around the shaft two or three times, and then his arm caught, and with the tearing off of his arm his clothes also were torn, and then he was let down on the floor with all his clothes torn off. On cross-examination he testified that the accident did not happen to him while he was putting on the belt, but that it was as he was attempting to get down that he was caught; that his clothes were caught on his left breast; that he knew what was going on but could not realize how it happened. James Phillips, who was on duty as engineer, was standing in sight and saw that just as appellee threw the belt

he got caught and went around the shaft somehow, and he went and stopped the engine, which was necessary in order to stop the shaft. Frank Wertz, one of appellee's associates as repairman, saw appellee immediately after he was injured, and testified that appellee was just getting up off the floor when the witness came in sight, and that appellee had nothing on but his shoes and stockings, and that his clothes were wrapped on the end of the shaft; that he, the witness, started to remove the clothes from the shaft, and did so until he got to the hand, and then quit. He was asked what he found the condition of the shaft, especially the end of it, or place where the keyseat was, immediately after the injury, and he answered: "I found a lot of—after the clothes was all taken off—shreds of cloth on that shaft that was not taken off. I guess they didn't pick them all off—on the shaft there after the clothes was taken off around those nicks and round in the keyway. Of course not right down in the keyway, I didn't look that close. There was lots of threads wrapped around in there, threads of cloth." On cross examination, it developed that Wertz, when he saw that appellee was hurt, first ran down stairs to shut off the machinery and found it shut off, and then came back, and that when he came back the clothes were all along the shaft there in from the end, but most of them were up against the pulley. Michael Olszewski testified that he saw appellee about five minutes after he was injured, he should judge; that he was then standing on the floor and had nothing on but his shoes and stockings; that his clothing and his hand were on the shaft, and he took off the clothes and the hand, and that after taking the clothes off he did not observe anything caught in the end of the shafting; that the keyseat was clear and most of the clothes were within a few inches of the pulley, and wrapped around the shaft, and that before he came there some one else had been working ahead of him and had taken off the clothing up to the hand and had

cleared a part of the shaft; that it looked to him as if some body had been trying to take off the clothing before he came; but that he had not seen anyone working there, but the belt had been cut off. Mike Cisack, appellant's millwright, testified that he arrived at the scene of the accident about a minute after appellee was injured, and found appellee sitting on the floor, and that he believed that a part of his clothes were wound up in the belt on the shafting close to the pulley; that no part of his clothing was on the north end of the shaft, and that the north end of the shaft was bare for probably ten inches. On cross examination, he testified that he would not swear that Wertz and Olszewski had not been there and taken clothing off from the shaft before he got there, and that they might have done so when he was away from there. It will therefore be seen that it was a disputed question of fact whether appellee's clothing was or was not caught in the keyseat, and that there was an abundance of evidence to sustain the verdict of the jury, which must have been based upon a finding that it was so caught.

The existence of this keyseat was known to appellant's foreman when the shaft was placed in its position about a year before this accident, and it was also known to the millwright. It was therefore known to appellant. The shaft was placed in that position by direction of the superintendent, and he and the foreman in charge were responsible for taking off the pulley which had been previously upon the end of that shaft, and for leaving the keyseat unguarded. If it was dangerous to employes having occasion to work about the end of that shaft while in motion to have such a keyseat, appellant was charged with notice of that danger. The proof was that the keyseat was invisible when the shaft was in motion.

Appellee had no part in the placing of this shaft in that position or in removing the pulley from the end. He testified that he had never seen that keyseat and did

not know of its existence. He was required to be in that room every morning, but it was for the purpose of inspecting certain clutches and certain elevator heads, and this was done while the shaft was in motion. That examination involved nothing in connection with this shaft except that he threw the clutch which stopped those pulleys which were not immovable upon the shaft and examined that apparatus to see that it was in proper condition. Evidence introduced by appellant tended to show that appellee had assisted in the mending of certain belts in that room during that year when the shaft was not in motion, but no one testified that he had even been in a position where he could see the north end of this shaft. The proof was that there was always much dust in this room, and that even when the shaft was not in motion the keyseat was not visible to any one unless he stood near the shaft or directly north of it and looked towards the end, and it was not shown that appellee had ever been in a position where he could see this keyseat when the shaft was not in motion. No one testified that his attention had ever been called to it or that anything had ever been said about it by any one in his hearing. The jury therefore were warranted in finding that he did not know of the existence of this keyseat with its nicks and battered condition.

There were posted about this building, and had been for a long time, notices which, among other things, forbade employes putting on a belt while the machinery was in motion. Appellee and another witness testified that on one occasion the foreman ordered appellee to put on a belt while the shaft was in motion; that appellee pointed to the notice, and asked the foreman what about that, and that the foreman said, "To hell with that; throw on the belt;" and that he obeyed these instructions. The foreman denied this incident. It was, however, proved by several witnesses that the foreman had frequently ordered belts put on while the

shaft was in motion, and that that was the usual and customary way in which that work was conducted, to the knowledge of the foreman and with his approval; and the foreman himself admitted that that was the usual and customary way in which the work was done. While it is usually negligence for an employe to violate a known rule, yet if the rule is habitually violated with the knowledge and acquiescence of the employer, or is not enforced, then the rule is treated as inoperative. C. & W. I. R. R. Co. v. Flynn, 154 Ill. 448; St. L. National Stock Yards v. Godfrey, 198 Ill. 288; Hampton v. C. & A. R. R. Co., 236 Ill. 249. This proof was introduced by appellee in chief. Appellant contends that it was error to admit it in chief for appellee. It may well be that it would have been entirely proper for appellee to wait until appellant introduced evidence upon that subject, but it could hardly fail that before the trial was through it would appear that there were such notices posted which appellee had violated in putting on this belt without causing the machinery to be stopped. The existence of these notices was a part of the *res gestae*, and we are of opinion that plaintiff had a right to anticipate the unfavorable impression which proof of the existence of these notices might make upon the jury, and to show that they were not binding because they were habitually disregarded, not only with the knowledge but also under the express commands of the foreman. Besides, appellant's counsel cross-examined at great length upon this subject, and made statements to the court which showed that appellant intended to rely upon these notices as a defense.

It is argued by appellant that appellee was an inspector of machinery; that if there was a defect in the north end of this shaft it was his duty to ascertain and report that fact; that he was the person, or one of the persons, through whom that information would or should reach appellant, and that on that account he cannot recover; and also that he must be presumed to

have had knowledge of the defect and to have assumed the risk. While he was called an inspector by some of appellant's witnesses, yet that is too strong a statement of his duties. He was one of the repair gang under the charge of Coleman, the foreman. Most of his duties were not upon the third floor at all, but at other parts of the factory. It was his duty to go to the third floor in the morning while the machinery was in motion and to inspect the elevator heads and grill clutches. But those parts of the machinery were not near the north end of this shaft, and they did not call him to that part of the third floor where this keyseat would be visible if the shaft was not turning, and this examination was made while the shaft was turning and when the keyseat was invisible if he had stood before it. Once each day the entire machinery was stopped for about ten minutes, while an inspection was made by Coleman and his men. Appellee's duty of inspection then was on another floor. If he got through with that work before the machinery started again, it was then his duty to go and help some one else. That duty might call him to the third floor. At such times, however, his duty was only to go to such places as he was sent to by the foreman and make such further inspection as the foreman directed. There is no proof that he was ever directed to inspect this shaft, or that any general or special duty was ever laid upon him which required him to examine or be at the north end of this shaft, or to see it when not in motion. Under all these circumstances (and the proof upon this subject is very full), we are unable to see how it can be said that he neglected any duty in failing to see this keyseat in the north end of this shaft on the third floor, or how he assumed the risk of accidents with that keyseat and assumed the risk of its battered condition and of the hook therein, when he knew nothing of the existence of these conditions and had no duty which required him to know of these conditions.

During the impanelment of the jury appellee was

permitted to ask various jurymen "Are you acquainted with any of the officers or agents of the Aetna Liability Insurance Company?" It is argued that this was error. When objection was made to the first of these questions, appellee's attorney made a statement to the judge which contained an intimation that there was some other party besides. appellee and appellant who might have an interest in this proceeding, and that such party had an agent at LaSalle, and that appellee's counsel desired to ascertain whether the jurors were interested in any way with any of these parties. To this statement in the presence of the jury objection was made and sustained. The abstract, however, fails to show, what the record discloses, that this was said in a low tone of voice by appellee's counsel. With that statement in the record, we have a right to assume that the remark was not heard by the jury, and therefore there was no prejudicial error in it. If it was a fact that appellant had insurance against such injuries to its employes, then the insurance company might very likely be an interested party to the proceeding, and if it had an agent in the county who very likely had placed this insurance, it would seem as if appellee would have a right to ask whether the jurors knew any of these parties, for the purpose of a peremptory challenge, if he saw fit. O'Hare v. C., M. & N. R. R. Co., 139 Ill. 151, 156; Iroquois Furnace Co. v. McCrea, 191 Ill. 340. We do not approve of the question. The attorney could have asked the juror whether he knew a certain person, naming to him the man whom he assumed was in fact an agent of this insurance company, and could have ascertained in that way whether he knew that person, and could thus have determined whether to exercise a peremptory challenge because of the relations of the juror with that person, without disclosing that the party named was an agent for an insurance company. When, however, the remark which was made in a low tone of voice is left out of consideration, we do not think the putting of the ques-

tion was reversible error. We think it did not contain the suggestion that appellant was insured, which was condemned in Eldorado Coal Co. v. Swan, 227 Ill. 586, and in McCarthy v. Spring Valley Coal Co., 232 Ill. 473.

It is argued that the damages awarded are excessive. At the time of the trial in 1907, appellee was twenty-seven years of age. Before the injury he was right-handed, was in good health and was earning $2.40 per day. He has lost his right arm, and was injured in the back, breast and limbs. He is permanently incapacitated for most kinds of manual labor. He was in a hospital three weeks, and was laid up for three months, and endured the pain and suffering usual in such injuries. During the summer of 1906 he worked some for appellant, and about two weeks before the trial he was again employed by appellant in its shipping department, and was then paid two dollars per day. He has not the education which fits him to enter upon employment where the use of his limbs is not needed. The amount of the damages to be awarded in such cases lies very much in the sound discretion of the jury. We do not feel warranted in saying that it ought to be reduced in this case.

It is argued that the court erred in various rulings upon the admission of testimony. We have examined these and do not find any reversible error in them.

Complaint is made of the refusal of the 40th instruction. It said that certain evidence would not of itself "permit the jury to recover." That was a clerical error for "permit the plaintiff to recover." If this had been the only defect in the instruction, we think the court should not have refused it for that obvious mistake, but should have corrected it; but we regard the instruction as erroneous in other respects. Moreover the jury were very fully instructed in behalf of appellant. We find no reversible error in the record, and the judgment is therefore affirmed.

*Affirmed.*