# THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY

## v.

## JOHN H. ROY.

1.  MASTER AND SERVANT.—When a servant enters upon an employment that from its nature is necessarily hazardous, he accepts the service subject to the risks incidental to it, and if he continues to use implements or machinery knowing that it is defective for want of repair, the master cannot be held liable for an injury within the scope of the danger which both contracting parties contemplated as incidental to such employment.

2.  CARE TO BE EXERCISED BY SERVANT.—An employee engaged in a hazardous service is required to use very great precaution to avoid danger, and if he fails so to do, and is injured, he has no right of action against his employer.

3.  NEGLIGENCE PER SE.—It was gross carelessness on the part of the plaintiff to attempt to get upon a moving engine by stepping upon the front foot board, especially in the night time, and this is so, independent of an express rule of the railroad company forbidding it, which rule the plaintiff took the responsibility of disregarding.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed January 7, 1880.

Mr. C. D. ROYS, for appellant; that plaintiff having knowledge of the defect in the lantern and afterwards continuing its use, he will be presumed to have assumed the risk, cited Jackson v. Owners of Hayland Silkstone Colliery, Eng. High Ch. Justice 1879; C. & N. W. R. R. Co. v. Donahue, 75 Ill. 106; St. L. & S. E. Ry. Co. v. Britz, 72 Ill. 256; C. & A. R. R. Co. v. Munroe, 85 Ill. 25; I. B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; C. B. & Q. R. R. Co. v. Clark, 2 Bradwell, 596; Ill. Cent. R. R. Co. v. Jewell, 46 Ill. 99.

The master is only bound to provide machinery that is suitable and adequate: Wood's Master and Servant, § 332; C. C. & I. C. R. R. Co. v. Troesch, 68 Ill. 548; M. R. & L. E. R. R. Co. v. Barber, 5 Ohio, St. 541; Wharton on Negligence, § 213.

Where the master has furnished safe appliances for the use of his workmen, and the servant refuses or neglects to use them, the master is not responsible for the consequences: M. C. R. R. Co. v. Coleman, 28 Mich. 440; Griffin v. Giddies, 3 H. & N. 648; W. & P. Ry. Co. v. McElwer, 67 Pa. St. 311; C. & N. W. R. R. Co. v. Donahue, 75 Ill. 106; Western & Atlantic Ry. Co. v. Bishop, 50 Ga. 106; C. & N. W. R. R. Co. v. Sweeny, 52 Ill. 325; C. B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510.

Plaintiff is estopped by the recitals in the agreement or contract of employment which he signed: Bigelow on Estoppel, 511; Wynkoop v. Cowing, 21 Ill. 570; Baker v. Pratt, 15 Ill. 568; Arnott v. Friel, 50 Ill. 174; Byrne v. Morehouse, 22 Ill. 608.

The contract became evidence by stipulation of counsel, and no ruling of the court could operate to impair it as evidence: Bingham v. Board of Super's, 6 Minn. 136; Fusslet v. Overdeer, 3 W. & S. 470; Clason v. Shepherd, 10 Wis. 299; Coultas v. Green, 43 Ill. 277.

Relevancy of evidence or whether there be any legal evidence, is a question for the court: L. S. & M. S. R. R. Co. v. Miller, 25 Mich. 274; Pleasant v. Fant, 22 Wall. 116.

Granting an instruction supersedes the ancient practice of demurrer to the evidence, and should be tested by the same rules: Improvement Co. v. Munson, 14 Wall. 448; Parks v. Ross, 11 How. 362; Schuchart v. Allens, 1 Wall. 359; L. S. & M. S. R. R. Co. v. Miller, 25 Mich. 274; Artz v. C. R. I. & P. R. R. Co. 34 Iowa, 153; R. R. Co. v. Houston, 5 Otto, 697; Wilson v. Hudson R. R. R. Co. 24 N. Y. 430; Amos v. Sinnott, 4 Scam. 440; Tefft v. Asbaugh, 13 Ill. 602; Poleman v. Johnson, 84 Ill. 269.

The plaintiff failed to make out a case, and the instruction to that effect should have been given: G. T. R. R. Co. v. Nichol, 18 Mich. 170; Davis v. Detroit & Mil. R. R. Co. 20 Mich. 105; Bevans v. United States, 13 Wall. 56; Ins. Co. v. Baring, 20 Wall. 159; Greenhaf v. Birth, 9 Pet. 292; Hendrick v. Lindsay, 3 Otto. 143.

Messrs. HITCHCOCK, DUPEE & JUDAH, for appellee; that it is

the duty of the railroad company to furnish its employes with safe materials, cited C. & N. W. R. R. Co. v. Swett, 45 Ill. 197; C. & N. W. R. R. Co. v. Jackson, 55 Ill. 492; T. W. & W. R. R. Co. v. Fredericks, 71 Ill. 294.

When a master has expressly promised to repair a defect, the servant can recover for an injury caused by use of the defective machinery or appliance, if happening within such a period after the promise as would be reasonable to allow for its performance: Sherman and Redfield on Negligence, § 96; 2 Hilliard on Torts, 466; Holmes v. Clark, 6 H. & N. 349; Greenleaf v. D. &. S. C. R. R. Co. 33 Iowa, 52; King v. C. R. I. & P. R. R. Co. 32 Iowa, 357; Snow v. H. R. R. Co. 8 Allen, 441; Wharton on Negligence, § 220; C. P. M. Co. v. Ballou, 71 Ill. 417; Richardson v. Cooper, 88 Ill. 274.

As to estoppel: The People v. Brown, 67 Ill. 435.

WILSON, J. This was an action on the case, brought by John H. Roy against the Lake Shore & Michigan Southern Railway Company, to recover damages for personal injuries suffered by him while in the employ of the company as night switchman at the company's yards at Chicago. Roy, while attempting to get on to the front foot-board of a locomotive engine, fell upon the track, and his right hand was cut off by the wheels passing over it. A verdict was rendered in the court below in his favor, for $7,500, of which the plaintiff remitted $2,500. Motion by the defendant for a new trial was overruled, and judgment was rendered upon the verdict less the *remittitur*, from which judgment this appeal is taken.

The grounds upon which the plaintiff below based his right to recover were, first, that the accident happened by reason of the neglect of the company to furnish him with a suitable lantern; and, secondly, because the company had improperly placed the foot-board of the engine at an unusual height from the ground, causing Roy to stumble and fall as he was attempting to step on it. The counsel for the railway company insists that the company is not chargeable with negligence in either of the respects mentioned, but that the injury resulted wholly from gross carelessness on the part of appellee, in attempting

to get on to the front foot-board, while the engine was in motion.

The declaration contains three counts, alleging that the plaintiff was in the employ of the railway company as night switchman, engaged in coupling and uncoupling cars and engines, throwing switches, making up trains, etc. The first count avers that the defendant did not use due care and diligence in the construction and repair of its engines, lanterns, and other apparatus, but so negligently, unskillfully and improperly constructed and maintained one of its engines and one of its lanterns, that plaintiff was thereby thrown under the engine and had his right hand cut off.

The second count alleges an unsafe condition of the engine, and that the steps thereof were so improperly constructed, and maintained, of which the plaintiff was ignorant, that the plaintiff while engaged in coupling and uncoupling the engine and cars, was thrown and fell upon the sleeper and track of the railroad, and thereby received the injury complained of.

The third count alleges that it was the duty of the defendant to keep its lanterns in good and safe repair, yet the defendant kept the lantern used by plaintiff in such bad and unsafe condition, that on the night of the accident the plaintiff, while engaged in coupling and uncoupling the defendant's cars and engine, notwithstanding the plaintiff had frequently before and at the time of the accident, objected and protested to the defendant against the unsafe condition of the lantern, yet being compelled, under the orders of the defendant to use the same, the plaintiff, by reason of the extinguishment of the light thereof, was unable to see, and was thereby thrown upon the track, and received the injury complained of.

Some criticisms are made upon the declaration by the counsel for the railway company, which, in the view we take of the case, it is not necessary to consider.

We will consider very briefly, first, whether the engine was improperly constructed; secondly, to what extent, if any, did the alleged imperfection in the lantern contribute to the accident; and thirdly, the want of care on the part of the plaintiff.

As to the engine, no proof was offered to show its general

bad construction or want of repair. The only objection to it is that the front foot-board was too high; that it was higher than the average and as appellee claims, higher than any other of the company's engines. It is sufficient to say that, according to the testimony of appellee's witnesses, the height of foot-boards in switching engines varies from six to sixteen inches. The evidence shows that there was no uniformity in the height of foot-boards, such as is seen in the steps of street-cars, or the width of tracks. This diversity of height was well known to appellee, from the experience which the evidence discloses he had had in this branch of the railway service, or which he had ample means of knowing. He knew that some were high and others low. He had, therefore, no right to rely upon an average height of foot-boards. It was thus immaterial what the average height may have been. The company was under no obligation to construct its engines with foot-boards of an uniform height; nor was it required to give notice of every change of height, and especially was there no such obligation as between the company and an employe whose daily observation had taught him there was no uniformity in that respect. We think therefore there is no ground for claiming that the railway is chargeable with negligence in the construction of the engine, or in the height of its foot-board.

As to the alleged negligence of the company in not furnishing appellee with a suitable lantern, it may be observed, first, that appellee used the lantern with full knowledge of its defects, and the general rule is well settled that when a servant enters on an employment, from its nature necessarily hazardous, he accepts the service subject to the risks incidental to it; or if he thinks proper to accept an employment on machinery defective in its construction or the want of proper repair, and with knowledge of the facts enters on the same, the master cannot be held liable for injury to the servant within the scope of the danger which both the contracting parties contemplated as incidental to it.

That appellee had full knowledge of the defect in the lantern is not disputed; but it is claimed by his counsel that to the rule above stated there are exceptions; that where the servant

is induced to continue his employment by promises from the master that the defective machinery or implements shall be repaired and made safe, the master is liable. And we have been referred to several highly respectable authorities which seem to sustain this view. The Supreme Court of this State have not, so far as we are aware, passed upon the question, and in the absence of an adjudication by that tribunal, we should be unwilling to depart from the general rule. But if we were to adopt as sound in principle the exception above referred to, we are by no means prepared to admit that the evidence in the present case brings appellee within the exception. The testimony on that subject comes wholly from the appellee himself, and is meagre and unsatisfactory. He applied to Bowden, the night yard-master, for a new globe, and was told by him that he hadn't any, but would order one. Whether Bowden was the proper person to apply to, or whether the officer of the company whose duty it was to supply globes was notified of this broken globe, is not shown. It appears that appellee, a short time prior to the accident, pasted a piece of paper over the hole in the globe, and was voluntarily using it in that condition when he was injured.

The evidence shows that the engine was on the main track, and was waiting for the switch to be thrown so as to allow it to return and pass on to the side track. The engineer testifies that appellee, after throwing the switch, signalled him to come ahead, and that he immediately started the engine forward, appellee being at the time about a rail's length distant. Appellee testifies that after throwing the switch, he picked up his lantern and walked towards the engine, and that his lantern did not go out until he was in the act of stepping on to the front foot-board. He thus had the benefit of the light of his lantern in guiding him to the engine, and in selecting the foot-board he would get upon, as fully as though the lantern had contained no defect. He selected the front, when it was his duty to have chosen the rear foot-board.

That it was gross carelessness on the part of appellee to attempt to get on to the front of the engine, under the circumstances, is manifest. The engine was under motion,

the night was dark, and the glare of the head-light, as appellee himself swears, compelled him to hold his head down, and prevented him from seeing the foot-board as he was approaching the engine.    In common with all others employed in that branch of the service, he knew that the attempt to get on to the front of an engine in motion is dangerous, and that to do so in the night time is full of peril and hazardous in the extreme.    Upon entering the service of the company he signed a written contract agreeing to abide by the rules and regulations of the company. In this agreement he acknowledged the receipt of a copy of the printed orders, rules and regulations of the company, and agreed, in consideration of his employment, to respect and obey them. Two of these rules were printed on the back of the time card handed to him at the time he went into the service of the company.    One of them declared that " every employe is required to use the utmost caution to avoid injury to himself or to his fellows, and especially in the switching of cars, and in all movements of trains, in doing which work each employe must look after his own safety.    Jumping on or off trains or engines in motion, getting between cars in motion to uncouple them, and all similar imprudences, are dangerous and in violation of duty. All employes are warned that if they commit them, it will be at their own peril and risk.    The company does not wish them to incur danger, but enjoins upon them to take time in all cases to do their duty in safety."    This rule against getting on to an engine in motion appellee took the responsibility of disregarding, when there was not the slightest necessity for it. He was fully aware that the company had provided a foot-board at the rear end of the engine for the purpose of enabling its employes to avoid danger.    He had to wait but a moment for the rear foot-board to reach him, on which he could step with comparative safety.    But aside from any express agreement, or any rules, it was equally incumbent upon him, for his self-protection and to avoid disaster, to have selected the rear foot-board.    The law is too well settled to need the citation of authorities, that an employe engaged in a hazardous service is required to use very great precaution to avoid danger, and if he fails to do so and is injured, he has no right of action

against his employer. The railroad company had made the necessary provision for a place of safety by placing a foot-board on the rear of the engine, and if the plaintiff chose to take the risk, he did it at his own peril.

That the engine was in motion at the time appellee attempted to get on, we think is fully shown by the evidence. Appellee, in his testimony, says: "whether the engine had started or not when I stepped to get on, I would not be positive about that; I don't think it had started; I am almost positive that it was not, but I would not be positive any way. If it had started it was just perceptible." He also swears that he could not state which happened first—his stepping to get on or the starting.

The only extent to which he is willing to go is, that if it had started it was just perceptible. Without imputing to him any willful misrepresentation, it is but natural to suppose that his recollection as to the occurrence would be most favorable to his own interest. But the person who had the best means of knowing the actual facts in the case, and who was produced as a witness by appellee, and is wholly disinterested, was the engineer in charge of the engine. He testifies: " When Roy gave me the signal to come ahead, he was a rail length from the engine. Immediately after the giving of the signal, I moved ahead very slow. I didn't stop after that until I stopped on account of this accident. The engine was going when he attempted to get on. For a person to get on the front foot-board when the engine is in motion is unsafe. When you are going ahead, the proper place for a person to get on and off when the engine is in motion is the hind end. There is a foot-board on both ends, put there for that purpose." He further testifies that the engine had gone a rail length before appellee undertook to get on, and that he saw him until the engine got up very near him.

But if the engine was only just in the act of starting, as appellee swears, he was not the less chargeable with carelessness. He had signalled the engineer to come ahead, and it was his duty to know that the engine had not started when he attempted to get on, or he should have gone to the rear foot-board. To

attempt to get on at the front, under the circumstances, was gross carelessness on the part of appellee, and the courts are powerless to afford him any redress for the injury resulting therefrom.

The jury rendered a verdict in appellee's favor, with $7,500 damages. From the large amount of the verdict, as well as from the character of the evidence upon which it was based, we are impressed with the belief that the jury were actuated by prejudice, or by an undue sympathy for the plaintiff. Their finding was not warranted by the evidence, and the court erred in not granting a new trial.

The judgment of the court below must be reversed, and the cause remanded for a new trial.

Reversed and remanded.