LUCY N. HAMPTON, Admx., Appellee, *vs.* THE CHICAGO
AND ALTON RAILROAD COMPANY, Appellant.

*Opinion filed October 26, 1908.*

1. TRIAL—*what evidence sufficient to go to jury on question of
engineer's knowledge of habitual violation of speed rule.* Evidence
that the plaintiff's intestate had made several trips, as engineer,
between certain points on the defendant's branch line; that for
several months trains had been run between such points at a speed
in excess of that allowed by the company's speed rule, and that
the deceased had been in defendant's employ as fireman and engi-
neer two years, is sufficient to go to the jury upon the question of
the deceased's knowledge of the habitual violation of such rule.

2. SAME—*what questions are settled by Appellate Court's judg-
ment.* The condition of the track where deceased's engine turned
over; the rate of speed at which the engine was running; the
proximate cause of its leaving the track, and whether the com-
pany's speed rule had been disregarded for so long a time that the
company must be ·deemed to have known of it and acquiesced
therein, are all questions of fact for the jury and are settled by the
Appellate Court's judgment of affirmance, where the evidence on
each point is conflicting.

3. RAILROADS—*abrogation of a rule may be shown by proof of
habitual violation.* Abrogation of a speed rule of a railroad com-
pany may be shown by proof of its habitual violation by employees
of the company with the knowledge of the company; and such
knowledge may be actual or constructive.

4. EVIDENCE—*effect where witness testifies differently on cross-
examination.* The fact that a witness testifies to a different state
of facts on cross-examination from what he testifies to on direct
examination affects merely the weight, and not the competency, of
his testimony, and is not ground for excluding it.

APPEAL from the Appellate Court for the Third Dis-
trict;—heard in that court on appeal from the Circuit Court
of Sangamon county; the Hon. JAMES A. CREIGHTON,
Judge, presiding.

PATTON & PATTON, (F. S. WINSTON, of counsel,) for
appellant.

HARDIN W. MASTERS, and THOMAS D. MASTERS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming a judgment of the circuit court in favor of appellee, against appellant, for $5500 damages on account of the death of appellee's intestate, William H. Hampton, which it is alleged was caused by the negligence of appellant.

The deceased, at the time of his death, was employed by appellant in the capacity of locomotive engineer. In October, 1906, the engine and tender deceased was in charge of left the track and the engine turned over. Appellee's intestate was caught under the engine and killed. The declaration charged that appellant negligently and carelessly permitted its railroad track to become and remain in an unsafe and dangerous condition; that the rails of said railroad track were loose and insecurely fastened to the cross-ties underneath them; that said cross-ties were decayed, rotten and unsound and the spikes were loose, so that said railroad track was rendered unsuitable and dangerous for the movement of trains upon it, and that on account of said defective condition of the railroad track the engine left the track, toppled over and killed appellee's intestate.

The evidence shows that appellant's railroad consists of a main line running from Chicago to East St. Louis and a number of branch lines. One of its branches is known as the Chicago and Kansas City division. This branch leaves the main line at Bloomington and runs in a westerly direction to Kansas City. Another branch, known as the Peoria branch, runs from Springfield north to Peoria and crosses the Kansas City division at a station called San Jose. Trains going from Bloomington to Peoria, on reaching San Jose *via* the Kansas City branch, pass from that track to the track of the Peoria branch by means of a Y and are obliged to run backwards from San Jose to Peoria. On

the morning of the accident the crew of which appellee's intestate was engineer was ordered to take an engine, tender and caboose from Bloomington to Peoria. The crew, besides the engineer, consisted of a fireman, conductor and two brakemen. They proceeded "head-on" to San Jose, backed around the Y upon the Peoria branch track and then proceeded, running backwards, toward Peoria. After having gone about four miles the engine and tender left the track, and after running upon the ties for from fifty to one hundred feet the engine turned over, killing the engineer. Deceased became an engineer on appellant's road in June before his death. Prior to that time he had been employed by appellant for about two years in the capacity of fireman.

Appellee's evidence abundantly tended to prove the allegations of the declaration as to the condition of the track and that these conditions caused the engine to leave the track. Appellant concedes that appellee's evidence, standing alone, made a *prima facie* case, and no motion was made at its conclusion to direct a verdict. Appellant offered in evidence a rule adopted by it for the management of trains, which reads as follows: "On branch lines, an engine running backward must reduce speed to ten or less miles an hour, according to condition of track, the object being to obtain absolutely safe movement." It also offered testimony tending to show that deceased had been furnished with a copy of this rule in June before his death, and that at the time of the accident the engine was running backward over the Peoria branch at a greater rate of speed than ten miles an hour. It further offered testimony contradictory to that of the appellee as to the condition of the track, and tending to show that the high rate of speed at which the engine was running, and not the defective condition of the track, caused it to leave the rails. In rebuttal, the appellee introduced testimony tending to show that the speed rule had never been in force or observed by trainmen, and that it had been the habit ever since its adoption,

and for several months prior to the accident, to run engines and trains backward from San Jose to Peoria at a rate of speed greatly in excess of ten miles per hour.

At the conclusion of all the evidence appellant moved the court to direct a verdict in its favor. The grounds upon which appellant based its right to have a verdict directed in its favor were, that the evidence did not show any habitual violation of the rule; that if there was such violation the evidence failed to show knowledge of appellant, actual or constructive, and that the evidence also failed to show that if the speed rule was habitually disregarded the deceased had knowledge of such habitual disregard.

The evidence is not clear as to how long the deceased had worked on or run trains over appellant's Peoria branch. He had no regular run, but appears to have been engaged the greater part of the time he was engineer, in running construction trains between Bloomington and Springfield on the main line, and between Bloomington and San Jose on the Kansas City division, and between San Jose and Springfield on the Peoria branch. He also made a number of trips,—how many the evidence does not show,—on the Peoria branch between Peoria and San Jose. The proof, as we have said, tends to show that the speed rule had been habitually disregarded in running trains backward between San Jose and Peoria, but appellant contends that there was no testimony tending to show that the deceased had actual knowledge of such habitual disregard of the rule, and that on account of his not having been frequently over the road between San Jose and Peoria it cannot be justifiably inferred from the evidence that he had such knowledge. In taking this position appellant assumes that the evidence shows that it was the violation of the speed rule that caused the accident. Whether this is true or whether the defective condition of the track was the proximate cause was a controverted question of fact, and on which side of the question was the greater weight of the evidence is not open to

review here. Furthermore, if proof of knowledge of deceased of the violation of the speed rule were necessary, we do not think it can be said, as a matter of law, that there was no proof upon this subject. A number of witnesses for appellee testified to the running of trains over the road where the accident occurred, for a period of several months before it occurred, at a rate of speed greatly in excess of ten miles per hour. Deceased had made some trips over this line before his death and had made other trips over other parts of the appellant's lines to and from San Jose. He had been in appellant's employment as fireman and engineer for more than two years prior to his death. These were circumstances proper to be considered by the jury upon the question whether he might have known of the disregard of the speed rule. Their sufficiency to prove the fact cannot be inquired into by us.

The evidence also was conflicting as to the rate of speed the engine was running when the accident happened. Two witnesses testified for appellee that it was "not going very fast," one that it was going "pretty fast," and one that it was running eighteen or twenty miles per hour. The conductor of the crew with Hampton at the time of the accident, and the two brakemen, testified the engine was running twenty miles per hour; the fireman, that it was running between fifteen and twenty miles per hour. In rebuttal, appellee introduced witnesses who testified that the fireman and one of the brakemen said, soon after the accident, that the engine was not running over ten miles an hour. The condition of the track, the rate of speed at which the engine was running, the proximate cause of its leaving the track, and whether the speed rule had been disregarded for such length of time that appellant must be deemed to have had knowledge of it and acquiesced therein so that it is to be considered abrogated, were all questions of fact properly submitted to the jury and upon which the judgment of the Appellate Court is conclusive.

It is insisted by appellant that the cross-examination of certain witnesses of appellee who testified as to the defective condition of the track shows that the defects described by them were not at the place where the tender and engine left the track but were several feet south of it, and for that reason the court erred in overruling a motion made by appellant to exclude the testimony of said witnesses. These witnesses testified in chief to the rotten ties, loose rails and spikes at the place where the tender and engine left the rails. If on cross-examination they testified to a contradictory state of facts, as claimed by appellant, this affected only the weight of their testimony and not its competency.

It is also argued that the court erred in admitting testimony of witnesses for appellee as to the running of trains between San Jose and Peoria backward at a rate of speed greater than ten miles per hour. Abrogation of a rule may be shown by proof of its habitual violation with knowledge of the employer. (*Chicago and Western Indiana Railroad Co. v. Flynn,* 154 Ill. 448; 6 Thompson on Negligence, sec. 7773.) Knowledge of the employer of the violation may be actual or constructive. If it is continued for such a length of time that the employer might reasonably have known of it, knowledge will be presumed. The basis of the objection to this testimony was, that the points of observation of the witnesses were at such places that it could not be presumed or inferred that the officers or agents of appellant would observe the violation of the rules. The same duty with reference to its track and rules governing the operation of its trains upon its line between Peoria and San Jose rested upon the appellant that rested upon it with reference to its other lines. There was no error in the admission of the testimony upon this subject, and we think the law applicable to it was stated with substantial correctness in appellee's fourth instruction, of which complaint is made by appellant.

Complaint is also made of the refusal of the court to give two of the thirty-one instructions asked by appellant. The twenty-nine instructions given cover twenty pages of the abstract and elaborately cover every question appellant was entitled to have given to the jury in the instructions.

Upon the controverted questions of fact the evidence justified the court in submitting the case to the jury, and we find no errors of law in the record that would justify a reversal of the judgment of the Appellate Court. It is therefore affirmed.                    *Judgment affirmed.*