120     APPELLATE COURTS OF ILLINOIS.

Campbell v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 120.

## James A. Campbell, Appellee, v. Chicago, Rock Island & Pacific Railway Company, Appellant.

## Gen. No. 5,102.

1. NEGLIGENCE—*when recovery under act of Congress providing for grab-irons not authorized.* Held, under the evidence, that the car in question in this case was not in use in interstate commerce so as to authorize a recovery for the violation of section 4 of the act of Congress requiring that cars used in interstate commerce shall be provided with secure grab-irons.

2. NEGLIGENCE—*when Illinois act of 1905 providing for grab-irons applies.* Servants who in the performance of their duties are preparing to make a coupling of cars are entitled to the protection of this act.

3. CONTRIBUTORY NEGLIGENCE—*when one engaged in coupling cars not guilty of.* Held, under the evidence in this case, that the plaintiff was performing his duties in the usual and customary manner, was not acting in violation of any existing rule of the master, was practically compelled to proceed in the manner in which he did in order to perform his duties, and was not guilty of contributory negligence in undertaking to get upon a brake-beam in front of a moving car.

4. MASTER AND SERVANT—*when appliances must be maintained in reasonably safe condition.* Notwithstanding the obligation to provide grab-irons for the use of employes may not have existed, yet if such appliances were furnished it is the duty of the master to keep the same in reasonably good repair and condition.

5. MASTER AND SERVANT—*what effects abrogation of rule.* Abrogation of a rule may be shown by proof of its habitual violation with knowledge of the employer, and such knowledge may be constructive as well as actual; and if the practice to violate the rule is continued for such a length of time that the employer might reasonably have known of it, knowledge by the employer will be presumed.

6. MASTER AND SERVANT—*when provisions for exemption from liability will not be enforced.* Even though a contract may provide for the exemption of the master from liability imposed by law for negligence resulting in injury to the servant, it will not be enforced where the provisions in question are contained in fine print, are not shown to have been read to the servant and contain among others recitals of material matters not true.

7. MASTER AND SERVANT—*effect of contract providing for exemption from liability.* A contract by which a master seeks to exempt himself from liability for negligence is invalid as against public policy.

Campbell v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 120.

Action in case for personal injuries. Appeal from the Circuit Court of Rock Island county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed June 10, 1909.

JACKSON, HURST and STAFFORD, for appellant; BEN-JAMIN S. CABLE, of counsel.

SEARLE & MARSHALL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On May 8, 1906, while appellee was at work for appellant as one of a switching crew, working with a switch engine of appellant in the yards of Deere & Company in Moline, appellee, at the head end of a string of three cars, gave a signal to the engineer to come ahead and, after the cars started, stepped upon the brake-beam with his foot or feet and at the same time put up his hands to take hold of the grab-iron on that end of the head car on that side, and failed to catch hold of it, and, finding himself falling, sprang to one side and threw his body outside of the rail. The front wheels passed over his left leg and it was crushed so that it had to be amputated above the knee. His right foot was seriously injured, some of his ribs were broken, and he was injured in the back of his head. He brought this suit against appellant to recover damages for these injuries. At a trial he had a verdict for $15,000 which was set aside. During the second trial he filed an amended declaration containing three counts. The first count charged that appellant had negligently allowed the grab-iron to become bent and out of repair and useless as a handhold and dangerous and unsafe for use in appellee's work of switching; that while engaged in switching that car to couple it to another he stepped on the brake-beam to be in his proper place to make the coupling and reached for the grab-iron, but because it was out of repair and bent, his hand could not pass between the

122   APPELLATE COURTS OF ILLINOIS.

Campbell v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 120.

iron and the car, and in consequence thereof he was thrown to the ground and injured. The second count was similar in allegation but also charged a violation of section 4 of the act of 1905 to promote the safety of employes and travelers upon railroads (Hurd's R. S. 1905, chap. 114, par. 226), which requires that there shall be secure grab-irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars. The third count contained like allegations as to the circumstances and the injury, but alleged a violation of section 4 of an act of Congress adopted March 2, 1893, requiring that cars used in interstate commerce shall be provided with secure grab-irons or handholds in the ends and sides of each car for greater security to men coupling and uncoupling cars, and it averred that this car was in use in interstate commerce. Defendant pleaded the general issue. Appellee had a verdict and a judgment for $14,000, and the defendant below appeals.

The proof is undisputed that appellee reached for the grab-iron, that it was bent, that he failed to get hold of it and that he fell because he did not get hold of it, and that his injury resulted therefrom. The clear preponderance of the evidence is that the grab-iron was placed diagonally upon the end of the car, the lower end being toward the outside; that if such an appliance was found by an inspector of appellant to be in bad order, a chalk mark was put upon the car at the defective place to call attention to the defect, and that there was no mark upon this end of that car indicating any defect in the grab-iron. Appellee looked at the grab-iron before he sprang up, and saw no defect. Appellant produced in court a grab-iron and produced proof that it was the iron which was taken off of the end of the car in question a day or so after the injury. That iron has been certified to this court, and if it is the grab-iron which was upon that end of the car at the time appellee fell, and if it is in the same condition now that it was when appellee fell, then,

though slightly bent, there was no place where a man's hand, with a glove upon it such as appellee wore at that time, could not easily pass between the iron and the wood. Appellant argues that this is the identical iron, that it is in the same condition now as then, and that therefore appellee has no case against appellant. Appellee testified that he could not get his hands between the grab-iron and the body of the car. As he lay upon the ground immediately after the accident he called the attention of those who first came to him to the defective condition of the grab-iron. John D. Weber, who was at that time yardmaster for Deere & Company, was some fifty or seventy feet away when appellee fell, and saw him fall and saw the wheels pass over him, and ran to him, and not long afterwards experimented with the grab-iron. He found that at the ends he could get his hand in but that the rest of the way it was bent so that he could not pass his hand between the iron and the car. He testified that there was probably one-quarter of an inch between the iron and the car, and that though he made an effort to get his hand in he could not do so, except at one end. John Sullivan was at that time acting as switchman for another railroad, whose tracks ran parallel to those of appellant. He was near by and came to the place of the accident while appellee still lay upon the ground. He testified that he went up to this grab-iron with a buckskin mitten on, and could not get his hand down behind it at the place where it was bent. Martin Thompson was fireman of the engine that was pushing these cars, but was in other employment at the time he testified. He testified that the handhold at that end of the car was bent in towards the car except at the ends, and that as near as he could see the iron was within a quarter of an inch of the wood of the car. Charles Dahlsted, who was then working as a switchman in the crew with appellee, testified that he examined the car after he got back from calling a doctor, and that the lower corner of this iron was badly bent,

124    APPELLATE COURTS OF ILLINOIS.

Campbell v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 120.

and that at the lower end there was not enough space to admit a hand with a glove on. Carl M. Williams, the engineer of that engine and still in the employ of appellant, testified as a witness for appellant that after the crowd had gone away he measured from the outside of the bent rod to the surface of the car and found it to be an inch and three-fourths, and measured the bend and found it to be about ten inches long. He testified that he did not measure the diameter of the rod but believed it to be five-eighths of an inch. That would make the distance between the inside of the iron and the wood of the car an inch and one-eighth. No other witness for defendant undertook to measure or ascertain the space between the iron and the car before it was removed from the car, and although two employes of appellant, one of them its claim agent, removed the grab-iron from the car a day or two later, they did not make any effort to first measure the distance between the bent portion and the car. Weber testified that if the grab iron presented in court was the same one that was upon the car at the time in question, then it had since been changed; that he saw the car inspector and the claim agent prying the grab-iron off from the car after the car had been placed at Deere & Company's plant, either the same day or the next day, and that they had a bar of some kind. Sullivan testified that between the first and second times that he saw this grab-iron it apparently had been straightened out some and looked as if a pry had been set behind the grab-iron to straighten it. Appellant's car inspector testified in its behalf that he and the claim agent took off the grab-iron, and that while they used a hammer in the operation, they did not bend the iron. In this state of the proofs the jury were warranted in finding that the grab-iron had been bent and that at the time of the accident there was not sufficient space between the iron and the car the greater part of the length of the iron for the hand of a switchman wearing gloves to take hold of it. The wearing

of gloves by appellee was shown to be customary and necessary to prevent laceration of the hands in doing his work.

The car in question had come from an interstate trip, and was being placed in Deere & Company's yards to be there loaded with implements for Utah. We are disposed to hold that at the time of this accident this car was not in use in interstate commerce within the meaning of the act of Congress before mentioned, and that therefore the evidence did not warrant a recovery under the third count.

Appellant contends that appellee was not engaged in coupling or uncoupling cars at the time of the accident, and that the state statute was only intended to provide greater security for men at the instant when they were in the act of coupling or uncoupling cars. This subject will be discussed in another connection. Appellant further contends that under the case stated in the first count of the amended declaration it was under no obligation to furnish any grab-iron on its cars, and therefore it cannot be held liable even if this grab-iron was so bent that its employes could not catch hold of it. We are of opinion that whether it was bound under its general duties to its employes to furnish such irons and handholds or not, yet, having furnished them and having sent the cars out thus equipped, its employes had a right to their being in fit condition for use and to use them on any and all proper occasions, and that appellant was in duty bound to use ordinary care to see that they were reasonably safe for use in the exigencies and emergencies of railway service.

Appellant further contends that there is no evidence that this defect had existed for such a length of time that appellant in the exercise of ordinary care should have ascertained the defect and repaired the iron or removed the car from service. The witnesses on both sides agree that this condition of the grab-iron was produced by ''cornering,'' that is, one car being on

a switch track but only partly removed from the main track, another car on the main track had struck it so that the corner of that car collided with and bent the grab-iron on this car. Appellant contends that this may have happened within a few minutes before the accident, and so short a time before that it could not have learned thereof. The proof is that nothing of that kind had happened while this switching crew had hold of that car. Weber testified that when he examined the grab-iron a half hour or an hour after the accident, the bend in the iron appeared to be an old bend; that he could tell by looking at it that it was an old bend. Dahlsted testified that from its appearance at the time he thought the bend had been there quite a while and that it was not a new bend. Williams, the engineer, appellant's witness, testified that it looked to him as if the bend had been done some time. Although appellant's car inspector removed the grab-iron within a day or two, yet he did not testify that there was anything in the appearance of the iron to indicate that it had been recently bent. In this state of the proof we would not be authorized to disturb the conclusion of the jury that the bend was not recent and that proper inspection of the car would have ascertained and remedied the defect before the car was sent to Deere & Company's yard to be loaded for this long journey.

Appellant's chief contention is that it was an act of gross and reckless negligence for appellee to undertake to get upon this brake beam in front of this moving car; that appellee's own testimony conclusively showed that he was not exercising due care for his personal safety; and that therefore the trial court erred in refusing to instruct the jury as a matter of law that appellee could not recover, and in giving other instructions submitting to the jury the question whether appellee was in the exercise of due care. Appellant relies strongly upon the language of this court in E., J. & E. Ry. Co. v. Docherty, 66 Ill. App. 17,

and also upon L. S. & M. S. Ry. Co. v. Roy, 5 Ill. App. 82. Besides other differences that will appear, this case is distinguished from those in this particular, that in those cases there was an express rule of the railway company, known to plaintiff, forbidding him to get upon a moving car or engine in the manner in which these plaintiffs did when they were injured. In this case appellant had no such rule, and appellee did not violate any rule by his conduct. There is also proof here that this was the usual and customary and almost necessary way in which a duty such as appellee was then discharging was then performed upon appellant's road. Even if there had been such a rule as in the cases above referred to, abrogation of a rule may be shown by proof of its habitual violation with knowledge of the employer, and such knowledge may be constructive as well as actual, and if the practice to violate the rule is continued for such a length of time that the employer might reasonably have known of it, knowledge by the employer will be presumed. Hampton v. C. & A. R. R. Co., 236 Ill. 249.

At the time this engine started to push these three cars into Deere & Company's yard, the purpose was to couple them to certain cars standing in that yard. The crew consisted of the foreman, engineer, fireman, and two switchmen. The foreman had gone to another part of the yard. The other switchman had gone on ahead into Deere & Company's yard for the purpose of going to their warehouse on some errand. Appellee was the only one in charge outside of the engineer. The engine was now headed west, so that the engineer's seat was on the north side. The distance to the car to which the coupling was to be made was about three hundred feet. Appellant's counsel say six hundred feet, but the preponderance of the evidence does not seem to justify that statement. Appellee had never been in this yard before. It was his duty to be at the head of the cars, both to make the coupling and also to look out for any other employes, either of the

128    APPELLATE COURTS OF ILLINOIS.

Campbell v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 120.

railway company or of Deere & Company, who might be working about the cars which they were to strike or who might come upon the track. There was a hand lever for coupling purposes on the front end of the head car, but that hand lever was on the south side of the car. There was an iron ladder and a sill step on the front end of that car, but they are also on the south side. If appellee took his station on the south side he would be out of sight of the engineer, and could only give signals to the fireman, to be by him communicated to the engineer. The fireman was often engaged in shoveling coal or attending to other duties, and was not expected to watch for signals. The photographs in the record are of a car said to be of the same class as the car in question, and it had the ladder on the end of the car at the south side. There is some proof, however, that this is not a correct representation of the way the car was built upon which this accident occurred. If appellee had ridden upon the south side there was between him and the car to which the coupling was to be made a scale box which would come within a very few inches of this car, which was a large furniture car, and his life would have been endangered from that source. Appellee could have got upon the top of the car, but it was not customary to get upon the top of a car to go so short a distance, and if appellee had done so, he could not have attended to his duties connected with the coupling. The proof warranted the jury in finding that the usual and customary practice in appellant's service, under such circumstances, was for the brakeman in charge of the string of cars to take a position on the engineer's side of the front end where he could signal the engineer directly and could also arrange for the coupling, and that it was a customary practice for the man at the front to step upon the brake-beam and take hold of the handhold iron provided, after he had given the signal and the cars had started. Appellant proved that there were foot boards on the front and rear of this engine, but

appellee could not have ridden upon either of these and performed the duties required of him. The coupling was known as a Janney coupler. The lever on the south side of the car could only lift the pin; it would not open the knuckles. It was generally found necessary to open one or both knuckles in order to make a coupling when the cars struck each other. The car to which they were to couple on stood on a curve, and the proof shows that when coupling with a Janney coupler on a curve it is practically impossible to do so without first opening the knuckles. Appellee's testimony is that he started to get upon this brake-beam for the purpose, not only of keeping watch ahead, but also and especially to open these knuckles while traversing the space of three hundred feet. It seems to us not too broad a construction of the Illinois statute to say that he was engaged in preparing this car for coupling within the meaning of that act and therefore was within the protection of the statute. C. & A. Ry. Co. v. Walters, 217 Ill. 87; I. C. R. R. Co. v. Heath, 228 Ill. 312. Under all these facts we are of the opinion that it was a proper question for submission to the jury whether appellee was in the exercise of due care for his own safety and whether he was performing his duties in the manner in which such duties were customarily performed in appellant's service with appellant's knowledge. The court therefore properly refused to hold as a matter of law that appellee could not recover for want of due care on his own part, and did not err in refusing appellant's instructions Nos. 1, 2, 3 and 4, of which refusal complaint is here made.

Appellant contends that appellee contracted to assume this risk, or is estopped to recover or to deny that he assumed the risk, because of a written application signed by him before he entered the employment of appellant. When appellee applied for a position upon appellant's road, he was handed a blank and told to fill it up, and he went home and did so, and then

130 APPELLATE COURTS OF ILLINOIS.

Campbell v. Chicago, Rock Island & Pacific Ry. Co., 149 App. 120.

went to the company's surgeon and was there examined, and then the application was turned in. This document covers eleven typewritten pages of this record. A certain part of it contains twenty questions to be answered by the applicant, in which he gives his family history, habits of life, railroad experience, etc. There then follows over four pages of solid matter which is proved to have been in fine print, wherein the railroad company seeks to bind the applicant to release the appellant from any of the duties which the law imposes upon it. Among these provisions are the following: "I have had explained to me the dangerous nature of the service in which I am about to engage. I understand that standing in front of, or getting on, an engine or car coming towards me is dangerous, and is in violation of the rules, and if done by me will be at my own risk. I understand that great care must be exercised in approaching and passing all bridges and overhead structures, as they will not clear a man standing on top of a high covered car; that it is dangerous to climb up and down the sides of cars, or to otherwise expose myself, while passing water tank spouts, sand house pipes, coal houses or chutes, seed houses, cotton platforms, signal posts, switch stands, mail cranes, roundhouse doors, buildings and other structures dangerously near to the track, as they will not clear a man with safety, and that I am required to look out for them and avoid danger. I understand that the duties of the aforesaid situation expose me to great danger, the risk of which I assume, and agree to use constant and proper care to prevent injury to myself and others." Appellee testified that he read none of this fine print. There is no proof that he did. There were several things in the statement that were untrue. It is not true that any one explained to him the dangerous nature of the service. Nothing was said to him in regard to getting upon an engine or car coming towards him. The company had no such rule as was there stated. Elsewhere in the fine print he is

made to say that he solemnly swears to the truth of the statement, but he was not sworn. If such a contract could be valid, we are of opinion that it ought not to be enforced when, as here, the provisions were of great length and in fine print and when no such explanations were made to the employe as were therein stated, and when the company had no such rule. But we think the principle applicable which was laid down in Consolidated Coal Co. v. Lundak, 196 Ill. 594, where the appellant had adopted certain so-called rules which were designed to relieve it from its duties and liabilities to its employes, and the court said of them: "They are nothing but an attempt to make laws under the guise of rules, and, so far as they are claimed to operate as a contract against the negligence and dereliction of the defendant, they are void as against public policy." Or as said in Himrod Coal Co. v. Clark, 197 Ill. 514: "A master cannot by a contract with a servant, in consideration of the employment, exempt himself from liability to the servant for injuries sustained through his negligence. Such a contract is void as against public policy."

We conclude that if the jury had found that appellee was negligent and was injured because of his own negligence and the trial judge had approved that finding, it would have been sustained here. But we are of the opinion that in view of all the facts and circumstances, a verdict for appellee, approved by the trial judge, is also entitled to stand.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*