## Carl Muenter, Appellee, v. Moline Plow Company, Appellant.

### Gen. No. 5,721.

1. MASTER AND SERVANT, § 166*—*what essential to charge master with liability for defects in machinery.* In an action by servant for injuries resulting from defective machinery, master is not liable unless he had actual or constructive knowledge of the defect and a reasonable time to repair after he is charged with such knowledge.

2. MASTER AND SERVANT, § 784*—*when instructions erroneous as ignoring reasonable time to repair.* Instructions ignoring the law of reasonable time to repair, *held* improper where theory of the case is that master had notice of defect in machinery when it was overhauled prior to the accident.

3. MASTER AND SERVANT, § 654*—*when conduct of other employes inadmissible.* Evidence that certain other workmen usually performed their work in the same manner that plaintiff did, *held* inadmissible.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

4. MASTER AND SERVANT, § 625*—*when opinions as method of work, inadmissible.* Opinions of witnesses, however expert, on question of the relative safety of two ways of performing work, inadmissible when such matter is within the easy comprehension of the jury.

5. MASTER AND SERVANT, § 182*—*when rule of master is abrogated by habitual violation.* Rule of employer may be abrogated by habitual violation with his knowledge, and his knowledge may be presumed when the violation continues for some time.

Appeal from the Circuit Court of Rock Island county; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the April term, 1913. Reversed and remanded. Opinion filed August 2, 1913.

SEARLE & MARSHALL, for appellant.

ANDREW OLSON and J. T. & S. R. KENWORTHY, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Carl Muenter, appellee, had the fingers of his right hand crushed while working for appellant, Moline Plow Company, at a drop hammer machine, October 11, 1906. This action is brought to recover for that injury, and resulted in the court below in a verdict and judgment for $5,654.46, from which this appeal is prosecuted. The machine consisted of an anvil with a hammer weighing about six hundred pounds suspended eighteen or twenty inches above the plate of the anvil; a pedal near the floor was used to release the hammer, which then fell to the anvil and raised to its first position where it was held by a "stopper" located about twelve feet above and concealed, or partially concealed from the operator when standing on the floor. The negligence alleged is in permitting this stopper to get out of repair so that it would not hold the hammer and the machine would "repeat."

Appellee at the time of the injury was fifty years old, had worked for appellant several years, and had

been working on this machine about ten months next before the injury. He was engaged in shaping small castings, which he took from the furnace with tongs held in his hand, thrusting the pieces of hot metal over the plate of the anvil, hammering them into desired shapes by blows from the hammer operated by the pedal, then putting them into a cart placed by him near by. There were two positions in which he might place this cart, in one of which after shaping the metal he drew it toward him and dropped it into the cart, in the other he thrust the metal forward to toss it into the cart. In the last position his hand would pass near the space between the suspended hammer and the anvil and not between the two, if he was careful to avoid it. There was obvious danger in thrusting the metal forward to the cart that the operator, through inattention, might get his hand between the anvil and suspended hammer, and through some defect in the machine, or by his own inadvertence in touching the pedal, the hammer might fall and crush his hand. The injury in question probably happened in that way; there was no witness other than appellee who saw it, and he is unable to tell how it occurred but says positively he did not touch the pedal. There was no danger in the other mode of operation. Sharply controverted questions in the case were, whether in the exercise of ordinary care, appellee should not have chosen the safe position; and whether he had received imperative orders from his superior officers not to do the work in the unsafe way. In other words, whether appellee was negligent, and whether he was violating orders, in doing the work in that manner at the time of the injury. There was also much conflict in the evidence as to the condition of the machine before the accident. It had been overhauled in August of that year and left by the machinist doing the work in what was regarded proper working condition; it had before the accident repeated three times in the ten months that

appellee had used it, probably none of those times after it was so overhauled, and it was much used during those five or six weeks. But there was some evidence tending to show a worn and bent condition of some of the stopping appliances at the time of the repair in August, that ought, in the exercise of reasonable care, to have been then remedied, or if not, greater care exercised by appellant to see that it did not, by use and wear, become unsafe. It was appellee's duty to take care of the machine. He oiled the stopper appliances twice a day and saw, or might have seen, such defects as he now claims existed, but he was not a skilled machinist, and the defects were of such character, if they existed at all, as might leave a question for the jury whether in the exercise of ordinary care he would have discovered them and known of the danger, and whether in the exercise of ordinary care appellant should have reasonably relied on appellee to detect and report any change in the condition that would make the machine dangerous.

There was sufficient evidence tending to prove the material allegations to compel the submission of the case to the jury; but taking the most favorable view for appellant of the evidence it was very close on the material controverted questions, and as we feel compelled to reverse and remand the case, we express no further opinion as to its weight.

Evidence was admitted for appellee, over the objection of appellant, that certain other workmen there employed before the time of the injury usually placed their cart in the position in which appellee's cart was placed at the time of the injury. This testimony might impress the jury as showing appellee was not negligent in placing the cart in that position because other workmen did so, and might also be taken by them as showing that appellee was justified in disobeying instructions not to place his cart in that position and do his work in that way, even if there was an express order to that effect, because the order was

not observed by other workmen. A rule of the employer may be abrogated by habitual violation with his knowledge, and that knowledge may be presumed if the violation continues for some time. *Hampton v. Chicago & A. R. Co.*, 236 Ill. 249; *Chicago & W. I. R. Co. v. Flynn*, 154 Ill. 448; *Campbell v. Chicago, R. I. & P. Ry. Co.*, 149 Ill. App. 120; 26 Cyc. 1161. The existence of a custom is often material in consideration of questions of negligence (*Chicago City Ry. Co. v. Lowitz*, 218 Ill. 24;) but it is not competent to show that some other one servant, engaged in the same business, violated a rule or did his work in a negligent manner (*Chicago & A. R. Co. v. Bragonier*, 119 Ill. 51), or did his work in a given manner, when the question for determination is, whether it was negligence to so perform the work? Appellant in the introduction of its testimony repeatedly offered evidence of customs prevailing in the shop within the knowledge of appellee at and before the time of the injury, and objections to such evidence were repeatedly sustained. Appellee was allowed great latitude in his evidence of what other workmen did and appellant was much restricted in its evidence of the same character.

Appellant's foreman, Granquist, was temporarily sick and confined to his house at the time of the trial; a continuance was asked for that reason and affidavit filed, setting out facts expected to be proved by him. Appellee elected to proceed to trial admitting that the absent witness would swear to such of the statements as the court might hold competent. The court excluded many of them as incompetent and immaterial, among them that he, Granquist, heard the assistant superintendent a few days before plaintiff was injured caution plaintiff from getting his hand under said drop under any circumstances without a block or a prop thereunder to prevent it falling on him; another that all the time plaintiff worked in the shop it was the continuous, universal practice and cus-

tom for the operators of said machine, including plaintiff, to look after and watch the working of their respective machines, keep the parts tightened up, and if out of repair, that they could not themselves repair, to report the condition to the foreman of the machinist department and have the same put in repair by defendant. We see no reason why these statements were not competent and material evidence. There were other statements in the affidavit excluded that might have been admitted without violating any rule of evidence, but as the affidavit will not be before the court on another trial we will not further discuss them. Our attention is called to the rulings of the court excluding evidence of opinions of witnesses as to the safe and proper manner of doing the work in question. It is a general rule that opinions of witnesses are inadmissible as evidence and that they are to testify to facts, leaving the jury to form the opinions. The exception to this rule is in cases where the subject-matter of the investigation is unfamiliar to the jury, when experts may be permitted to testify to opinions on certain questions involved. We do not regard it error for the court to exclude, as he did, opinions of witnesses however expert, on the question of the relative safety of the two ways of placing the cart, that was a matter within the easy comprehension of the jury. There were other questions concerning the operation of the stopper that might not have been understood by the average layman, and therefore might call for expert evidence, perhaps involving the opinion of the expert testifying. A reference to *Kellyville Coal Co. v. Strine*, 217 Ill. 516, and authorities there cited, will indicate the recognized rule without extending this opinion by pointing out the questions in detail.

Complaint is made of the action of the court in giving and refusing instructions. Taken as a whole, the instructions are not unduly favorable to appellee; but they are open to the criticism of ignoring the

law of reasonable time to repair, in other words, the law that the master is not liable for a defect in machinery unless he has actual knowledge or constructive knowledge of it, and a reasonable time to repair after he is charged with knowledge. Appellee's counsel say that the defect if any existed in August, that the master is charged with actual knowledge of it because the machine was then overhauled by its servant, therefore there is no question of a reasonable time to repair. They are in error. There was a question for the jury whether the machine was in reasonable repair after it was overhauled in August, and became defective, if at all, shortly before the injury; the fact that it worked perfectly from the time it was over-hauled until the time of the injury supports this hypothesis; and on that theory of the case it was material, if the master was charged with notice at all, whether it was a sufficient time before the accident to enable it in the exercise of reasonable care to repair before the time of the injury. Therefore the law of reasonable time for repair could not be ignored in instructions to the jury.

For the errors indicated the case is reversed and remanded.

*Reversed and remanded.*