# CASES

## THIRD DISTRICT

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1910.

---

### Jacob Sturm, Appellee, v. The Consolidated Coal Company, Appellant.

1. MASTER AND SERVANT—*what risks not assumed.* A servant is not barred of a recovery under the doctrine of assumed risk if his injury results by reason of the departure by the master from an established custom having reference to the manner of doing business in connection with the servant's employment.

2. MASTER AND SERVANT—*when negligence of fellow-servant will not bar recovery.* Although the negligence of a fellow-servant of the plaintiff may have contributed to his injury, still if such injury was the result in part of the negligence of the master, the plaintiff is entitled to recover.

3. EVIDENCE—*when proof of custom competent.* The custom of doing business is competent where the proof thereof tends to show that an injury resulted from the non-observance of such custom.

4. DAMAGES—*what appropriate in action for personal injuries.* Money expended or liability incurred in seeking to effect a cure of personal injuries sustained is an appropriate element of damages to be awarded.

Action in case for personal injuries. Appeal from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1909. Affirmed. Opinion filed March 30, 1910.

BROWN, WHEELER, BROWN & HAY, for appellant; MASTIN & SHERLOCK, of counsel.

PEEBLES & PEEBLES, for appellee; EDWARD C. KNOTTS, of counsel.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

The plaintiff, Jacob Sturm, recovered a verdict against the Consolidated Coal Company, defendant, in the circuit court of Macoupin county for the sum of $5,000 as damages for personal injuries alleged to have been sustained by the negligence of the defendant. The plaintiff entered a *remittitur* of one-half of the verdict and judgment was entered against the defendant for $2,500, from which judgment this appeal is prosecuted. The cause was submitted to the jury upon five counts of the declaration alleging common law negligence. The first, second and third counts allege that a certain wire cable operated by steam power was in use in defendant's mine for hauling cars; that at the curves and turns in the entries in said mine the operation of the cable was controlled by crowd-rollers, being certain devices used to keep the cable in place; that it was the duty of the defendant to use reasonable care to keep a sufficient number of crowd-rollers to control the cable as it made the turn at a certain curve in the entry where plaintiff was injured, and that it was the duty of the defendant to use reasonable care to keep said crowd-rollers at said curve in a reasonably safe condition of repair so that said cable might be kept in its place. Said counts further allege the breach of said duties by the defendant and that the plaintiff while in the exercise of due care was injured by reason of such breach. The fifth and sixth counts allege in substance that the plaintiff was at work helping to relay or replace the cable in its proper place at a certain curve in one of the entries of defendant's mine; that while plaintiff was doing such work the said cable had ceased its motion, and that it was the duty of the defendant under such circum-

stances, and while the plaintiff was working in close proximity to said cable, not to suddenly start the same without notice or warning to the plaintiff; that defendant violated its duty in that behalf and negligently, suddenly and violently started the said cable without giving any notice or warning whatever to plaintiff, whereby the said cable was thrown off of the crowd-rollers and the leg of the plaintiff was caught by the sudden and violent starting of said cable, and he was thereby dragged to the rib of the said entry and injured; that at and before the time of his injury the plaintiff was in the exercise of due care for his own safety.

The evidence discloses substantially the following facts: There is operated in defendant's mine a wire cable having a continuous length of about three miles, to which cable coal cars are attached by grips, and are thereby propelled to the place of loading, and when loaded are propelled to the mouth of the shaft. The cable runs over a drum which is placed in an engine house located about fifty feet back of the hoisting engine at the mouth of the shaft, and is operated by a separate engine. The cable runs down the shaft and out to a parting on the empty track where it circles another drum, and then comes back on the full track to the shaft bottom. The cable is operated as near the center of the tracks as possible, and while in motion is kept in place by spool-shaped iron rollers, which rollers operate horizontally where the track is approximately straight, and operate vertically where the track is curved. The latter type of rollers are called "crowd-rollers," and are fastened to the center of the track by pins driven through the rollers into the ties of the track. The horizontal rollers are placed along the center of the track about thirty feet apart, and the crowd-rollers are placed from six to twelve feet apart, depending upon the abruptness of the curve in the track. The engine which operates the cable is started

and stopped by the hoisting engineer, or by the fireman, under his direction. When the cable is once started it continues in motion until a stop signal is given. The signal for starting or stopping the cable is given from the bottom of the shaft by ringing a bell seven times and the signal for slacking the cable when it becomes necessary to repair it or place it in position when it becomes displaced by being thrown or jerked out of the grooves in the rollers, is by calling up the shaft or by writing directions with chalk on the side of a car. At the time of his injury plaintiff was between 68 and 69 years old. He had been employed in coal mines for over forty years and for twenty-two years in defendant's mine, during eleven and one-half years of which time his particular employment was to keep the rollers greased and clean and to keep the cable and rollers in working order. There were also employed in the mine men designated as "grippers," whose duty it was to take charge of the cars. The cable would occasionally be forced off the rollers from various causes, and when this occurred it would be stopped and slackened, and if necessary, all of the available men in the mine, including the plaintiff, assisted in placing it in proper position upon the rollers. After the cable was stopped for any reason there was an invariable custom in the mine not to restart it until the expiration of ten minutes. On July 18, 1906, the cable jumped from the crowd-rollers at a turn in the track about half a mile from the shaft, and the plaintiff hurried to the place for the purpose of assisting in putting the cable in position. At the turn of the track in question there were usually 13 or 14 crowd-rollers, but at the time of the injury to plaintiff there were only six good rollers in place, together with five half rollers and three pins projecting from the ties without any rollers, and the evidence tends to show that the crowd-rollers at said turn of the track were insufficient to properly control the operation of the cable.

Prior to the accident the plaintiff had frequently asked the pit-boss whether the rollers ordered, at his request, to replace the defective and missing rollers had arrived and the pit-boss informed him at the time of their last conversation that he had ordered them, but they did not come and he could not help it. When the plaintiff arrived at the turn of the track in question he found the cable in motion entirely off the rollers, and also there found Frew, the pit-boss, and three grippers, Linehart, Hiller and Anschultz, who, together with the plaintiff, placed the cable in position after it had been stopped and slacked. It was then noticed that one of the pins which had no crowd-roller upon it was is such contact with the cable that the cable was likely to be injured or destroyed, and Frew and Linehart attempted to remove the pin by striking it on its several sides and then pulling it out with their hands, but without success. That the plaintiff then undertook to remove the pin and was so engaged about two minutes when the cable was started and thrown off the crowd-rollers, catching the plaintiff's left leg above his knee, carrying him over to the north or gob side of the entry and against the wall of the entry, causing the injuries complained of.

The evidence tends to show that Carl Weller, one of the grippers, told the cager that the time was up, and the cager communicated the direction to the engineer or fireman to start the cable again. The evidence further tends to show that an interval of ten minutes had not elapsed between the time when the cable was stopped and when it was started again.

The plaintiff testified that while he was attempting to remove the pin he occupied a stooping position, facing toward the north, with both legs outside of and on the south side of the cable; that he assumed that position because he did not want to get caught by the cable if it jumped off the rollers; that he knew if he stood on the inside of the cable it was liable to jump

off and catch him. The testimony of the witnesses Heller and Linehart tends to corroborate the testimony of the plaintiff as to his position with reference to the cable when he was attempting to remove the pin.

It is first insisted on behalf of defendant that it is physically impossible that the cable could have caught the plaintiff on the inside of his left leg and drawn him toward the gob side of the entry on the north, unless he had his left leg on the north side of the cable when he was attempting to remove the  pin, and that by placing himself in that position with reference to the cable he was guilty of such contributory negligence as precludes a recovery. It may be conceded that the manner in which the plaintiff received his injuries would apparently indicate that when the cable was jerked from the rollers his left leg was inside or north of the cable, but under the evidence in the record we cannot so hold as an indisputable conclusion of fact. There is evidence tending to show that when the cable is suddenly set in motion, as it was in the case at bar, it is frequently jerked from the rollers to a height of from two to three feet. The plaintiff's left hand and a portion of his left arm must necessarily have been on the north or gob side of the cable when he was attempting to remove the pin, and it is not at all improbable that when the cable suddenly left the rollers it caught the plaintiff on the inside of his left arm and that a portion of his body was thereby thrown over the cable and carried to the north wall of the entry so rapidly that plaintiff was unable to extricate himself. It clearly appears from the evidence that the circumstances attending the manner in which the injury was occasioned transpired so rapidly as to make it impossible to apprehend the exact manner in which it occurred. The question was properly one for the jury to solve and we are unable to say that they erred in their conclusion.

It is next urged that the plaintiff must be held to

have assumed the risk by reason of his intimate acquaintance with the situation and conditions existing at the time of his injury. There wou'd be much force in this contention if the plaintiff had been injured in the performance of the work he was undertaking to do before the cable was set in motion, but he cannot be held to have assumed the risk of the danger arising from the sudden starting of the cable before the expiration of the time which under an established custom in the mine should have elapsed before such cable was started.

The fellow-servant doctrine is relied upon by the defendant to absolve it from liability. As we read the record the cable was started upon a signal given by the cager to the engineer or fireman at the mouth of the shaft upon the suggestion of Carl Weller, one of the grippers, that the time was up, but there is some confusion in the record as to whether or not one Gus Ruhrup, who was employed as a cager and cable repairer, joined in the direction to the cager to give the signal to start the cable, supposing that the customary period of ten minutes had elapsed since it was stopped. There is no pretense that either the cager or the engineer or fireman were fellow-servants of the plaintiff and if it be conceded that Weller and Ruhrup were fellow-servants of the plaintiff, the defendant would not be absolved from liability, because the cager and the engineer and fireman must be held to have had knowledge of the general custom in the mine that when the cable was stopped it was not to be again started until at least ten minutes had elapsed. Although the negligence of a fellow-servant of the plaintiff contributed to his injury, still if such injury was caused in part by the negligence of the defendant the plaintiff is entitled to recover. Kennedy v. Swift & Co., 234 Ill. 606.

It is further urged that the court erred in admitting evidence of the custom or usage in defendant's mine

that the cable was not to be started until the expiration of ten minutes after it has been stopped. The action of the court in admitting this evidence was amply justified by the rule laid down in North Chicago St. R. R. Co. v. Irwin, 202 Ill. 345; St. Louis Nat'l. Stockyards Co. v. Godfrey, 198 Ill. 288; Kennedy v. Swift & Co., 234 Ill. 606, and Franey v. Union Stockyards Co., 235 Ill. 522.

It is further insisted that is was error to admit the testimony of plaintiff as to the amount of the bills for professional services rendered to him by his attending physicians, and bills for medicines purchased from the druggist, because such bills were given to the jury in total amounts without reference to whether the same had been incurred prior or subsequent to the bringing of the suit. The injuries inflicted upon the person of the plaintiff were shown to be permanent, and he necessarily incurred some liability for medical services and medicines in an endeavor to alleviate his pain and suffering, not only prior to the bringing of the suit, but also subsequent thereto, and his liabilities in that respect were proper to be considered by the jury in estimating the amount of damages which he was entitled to recover. In Chicago City Ry. Co. v. Henry, 218 Ill. 92, it was held, that a plaintiff must exercise reasonable care to effect a cure and mitigate the effect of the wrongful act and is entitled to recover all legitimate expenses incurred for that purpose, and if it is proved that further expenses for a surgical operation or medical treatment or attendance will necessarily be required the jury may take that fact into account; that it is competent for a plaintiff to show by evidence the value of the expenses which he has incurred for medical and surgical services and if he would be subject to like expenses in the future it is competent to prove that fact. In the case at bar the plaintiff made no effort to prove the value of medical services and medicines which he would necessarily

incur in the future but the proof was limited to the expenses already incurred for such purposes. It was not error to admit the proof as offered. Furthermore, there is no contention by defendant that the damages awarded to the plaintiff are excessive.

It is urged that the fifth instruction given at the instance of the plaintiff was erroneous in that it referred to the custom existing in the mine not to start the cable until the expiration of ten minutes after it had been stopped, and because it assumes that the defendant had knowledge of such custom. By the instruction the jury were required to believe from a preponderance of the evidence that there was such a custom of long standing. If the custom was one of long standing the defendant must be presumed to have had notice of it, and the failure in the instruction to require actual proof of such notice could not have operated to the prejudice of the defendant. The first, second and third instructions tendered by the defendant and refused by the court were properly refused because they directed the jury to disregard certain counts of the declaration which were supported by some evidence in the case. The same may be said of the fourth and fifth instructions tendered by defendant and refused by the court. The phase of the fellow-servant rule presented by the sixth instruction offered by the defendant and refused by the court was not applicable to the facts in the case and was properly refused. By the fifth instruction given at the instance of the defendant the jury were properly instructed as to the fellow-servant rule applicable to the case. The seventh, eighth, ninth and tenth instructions offered by defendant were properly refused because they ignored the question of the custom heretofore referred to. The eleventh instruction offered at the instance of the defendant was properly refused because it precluded a recovery unless it was shown by the evidence that some servant of the defendant superior in author-

ity to the plaintiff had directed the starting of the cable in violation of the custom proven by the evidence. To make the defendant liable it was not necessary that some servant of the defendant superior in authority to the plaintiff should have directed the starting of the cable in violation of the custom, but a liability would be incurred if the cable was so started by any servant of the defendant who was not a fellow-servant of the plaintiff, or by the direction of a fellow-servant concurring with the negligent act of the defendant in so starting such cable.

We perceive no error in the record prejudicial to the defendant and the judgment of the circuit court will be affirmed.

*Affirmed.*